624 So.2d 422 (1993)
STATE of Louisiana
v.
Terrance Levon CLARK.
No. 91-KK-1688.
Supreme Court of Louisiana.
September 7, 1993.
*423 E. Daniel Burt, Jr., Wayne J. Blanchard, Burt & Hendrix, Shreveport, for applicant.
Richard P. Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Hugh A. Holland, Jr., Asst. Dist. Atty., for respondent.
John M. Madison, Jr., Larkin E. Greer, Shreveport, for Shreveport Bar Ass'n amicus curiae.
Harry S. Hardin, III, New Orleans, for Louisiana State Bar Ass'n amicus curiae.
CALOGERO, Chief Justice.[*]
We granted writs in this case to determine whether an attorney appointed to represent an indigent defendant was in contempt when he declined to accept the court appointment. Because we find that the appointment was properly made, and that the attorney improperly refused to serve, we affirm the district court's finding of contempt.
Terrance L. Clark, an indigent, was charged with armed robbery in the 1st Judicial District, Caddo Parish. The trial court appointed Joey W. Hendrix from a list of volunteer attorneys to serve as Clark's counsel.[1] The appointment in this case was the attorney's fifth felony appointment in a four month period. After the Indigent Defender Board informed Hendrix that it would not compensate him,[2] he filed a petition to withdraw. *424 The trial court denied the motion. Hendrix amended the motion and proffered further evidence. The trial court thereafter denied the motion as amended. When Hendrix persisted in declining to represent Clark, the trial court held him in contempt, but stayed execution of sentence pending disposition of his writ application. Hendrix's application to the Second Circuit Court of Appeal was denied, but this Court vacated the trial court's finding of contempt and ordered the trial court to take additional evidence. State v. Clark, 577 So.2d 40 (La. 1991). After a hearing, the trial court again found Hendrix in contempt. The court of appeal affirmed the trial court's contempt finding. State v. Clark, No. 23273-KW (La. App.2d Cir. June 21, 1991). Hendrix took writs to this Court, which we granted. State v. Clark, 602 So.2d 1 (La.1992). We consolidated this case for argument with State v. Peart, 621 So.2d 780 (La.1993), and State v. Wigley, 624 So.2d 425 (La.1993). Here, we must consider whether a court appointed attorney, without first seeking an interlocutory review of the court's ruling, may avoid the consequences of his disobedience when he refuses to defend an indigent.
Until today's decision in Higginbotham, the bellwether case in this area was State v. Clifton, 247 La. 495, 172 So.2d 657 (1965). In Clifton we held that
[t]he professional obligations assumed by attorneys in this State require that a reasonable amount of time and effort be devoted to promoting the cause of justice, including the defense of indigent accused without compensation. The high purpose and traditions of the legal profession require that this burden be shouldered by its members. So long as the burden is not oppressive and is fairly shared among the members of the bar to which they belong there is no cause for complaint.
172 So.2d 657, 667. Clifton requires that attorneys must serve and represent indigents unless the appointment is unreasonable and oppressive. Nothing in our more recent decisions changes the principle announced in Clifton. The questions posed by the instant case thus are two: first, was Hendrix's appointment to represent Clark unreasonable and oppressive, and, second, even if the appointment were unreasonable and oppressive, might Hendrix rightfully refuse to obey the trial court's order.
Upon examining the trial court record, including the transcript of the hearing which the trial judge conducted in connection with the motions to withdraw, we do not find adequate support for Hendrix's claim that the burden imposed by the appointments rose to an unreasonable level. Hendrix did show that he received four felony appointments in five months. However, he did not show how much time he was required to spend on the appointments. He showed neither how many of the cases went to trial, nor how much time he spent pre-trial. Nor did he support with any specificity his claim that his private practice suffered or that he was unable adequately to represent the indigent defendants. While a private attorney might be appointed to enough cases so that the burden placed on him could become unreasonable, Hendrix has not made such a showing, sufficiently clearly, for this Court to upset the trial court's exercise of discretion in making the appointments.
Second, even if the trial judge had abused his discretion in appointing him and had made the appointment unreasonably, Hendrix was bound to abide by the judge's order until that order was overturned by a higher court. "Absent a showing of transparent invalidity or patent frivolity surrounding the order, it must be obeyed until stayed or reversed by orderly review." Lake Charles v. Bell, 347 So.2d 494, 496 (La.1977). A trial judge's orders must be obeyed, irrespective of the ultimate validity of the order, unless the trial judge stays the order to permit review. Id.; see also Lewis v. S.S. Baune, 534 F.2d 1115 (5th Cir.1976) (the proper method of challenging a court order is by appeal and not by disobedience, since by violating a court order, even when the order is later set aside as incorrect, the person refusing to comply with the order runs the risk of being held in contempt); State v. Meyer, 375 So.2d 372 (La.1979) (remedy for *425 an order a party believes erroneous is to apply for review; unless the court issues a stay, the party must comply promptly with the order). Thus, even if the trial court's appointment had been unreasonable and oppressive, which has not been shown in this case, Hendrix's disobedience was still improper.

DECREE
The judgment of the court of appeal is affirmed and the case is remanded to the district court.[3]
AFFIRMED; REMANDED TO DISTRICT COURT.
NOTES
[*] Cole, J., was assigned to participate in the decision of this case, which was argued before he retired.
[1] La.Rev.Stat.Ann. § 15:145(A) (West 1992) provides that each of the state's Indigent Defender Boards "shall maintain a current panel of volunteer attorneys licensed to practice law in this state and shall additionally maintain a current panel of nonvolunteer attorneys under the age of fifty-five licensed to practice law in this state and residing in the judicial district."
[2] La.Rev.Stat.Ann. § 15:146 (West 1992) created an indigent defender fund in each judicial district to be administered by the Indigent Defender Board. The fund consists of special costs assessed by courts of original criminal jurisdiction as well as the sum of $10,000.00 per annum from the state. Although the board is legislatively authorized only to expend funds for its necessary expenses, including employee compensation and reimbursement to board members for actual expenses, it is fair to assume that at least volunteer counsel appointed by the court to represent indigent defendants are also to be paid, funds permitting. In fact, § 15:146(B)(1)(b) provides that after certification to the court that sufficient amounts are in the fund to pay timely appointed counsel, the Twenty-Seventh Judicial District Court is authorized to increase or decrease the amount of special costs.
[3] We note that prospectively at least, our holding in State v. Wigley and Higginbotham will lessen the hardship on volunteer and non-volunteer attorneys. In Higginbotham, we held that although the principle announced in State v. Clifton is still valid, contemporary criminal law and the practice of law today require that attorneys be reimbursed for their expenses and overhead costs and that the time an attorney must devote to criminal representation for which he does not receive a fee must not reach excessive levels. More particularly, we held that

in order to be reasonable and not oppressive, any assignment of counsel to defend an indigent defendant must provide for reimbursement to the assigned attorney of properly incurred and reasonable out-of-pocket expenses and overhead costs, although it need not in addition pay him a fee for services, provided that the time the attorney must devote to cases for which he does not receive a fee does not reach unreasonable levels. What is unreasonable in this context is to be determined by the trial judge in the exercise of his discretion. Such a system will strike a balance between the attorney's ethical duty to provide services pro bono publico and his or her practical need to continue to perform his or her other obligations.
Opinion at 429.