| ?FOIL, Judge.
We granted certiorari to review the trial court’s ruling adjudging attorney Michele Fournet guilty of direct contempt of court for conduct that occurred during her representation of a criminal defendant in a trial resulting in her client’s acquittal on a charge of second degree murder. The court sentenced Ms. Fournet during the trial to a fine of $100.00. After a thorough review, we deny relator’s application for supervisory relief, concluding that the evidence is sufficient to support the contempt citation.
Relator was found to be in direct contempt of court, which is defined in pertinent part in La.Code Crim. Pro. art. 21 as follows:
A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness.
A direct contempt includes, but is not limited to, any of the following acts:
[[Image here]]
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority[.]
On review of a criminal conviction, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the crime was proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La.1984). In In re Milkovich, 493 So.2d 1186, 1189 (La.1986), the Louisiana Supreme Court noted the applicability of the Jackson v. Virginia standard in evaluating the sufficiency of the evidence supporting a contempt citation, concluding as follows:
Thus, an appellate court reviewing this conviction of criminal contempt under Article 21(5) must determine that the evidence, viewed in the light most favorable to the prosecution; was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant’s acts constituted contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business |sof the court *691 or to impair its dignity or respect for its authority.
The court further noted that “the issue is not whether the judge’s ruling on the objection was correct, but whether relator’s conduct constituted contumacious behavior toward the judge which tended to interrupt the court’s business or to impair the court’s dignity or the respect for its authority, as contemplated by Article 21(5).” Id. at 1195.
In reviewing an attorney’s failure to comply with a court order in State v. Clark, 624 So.2d 422, 424 (La.1993), the Louisiana Supreme Court noted that, “Absent a showing of transparent invalidity or patent frivolity surrounding the order, it must be obeyed until stayed or reversed by orderly review” irrespective of the ultimate validity of the order.
In order to consider Ms. Fournet’s conduct in the proper perspective, it is necessary to review certain facts and the procedural background of the criminal proceeding in which she was involved. Her client, Jeremiah Johnston, who was fifteen years old at the time of the offense, attended Central High in Baton Rouge, Louisiana. The victim, Cory Hurst, a fellow student at Central High, died after Johnston ran over him while driving a van. At the time, Johnston and a friend (Brent Trueil) were involved in a confrontation with Hurst and a group of Hurst’s friends on a street near Johnston’s residence.
Initially, the defense sought to show Johnston feared Hurst because of prior acts of violence by Hurst against Johnston and some of his friends. Johnston did not claim self-defense, but alleged he was so afraid of Hurst that he was attempting to flee the scene of the conflict and accidentally ran over Hurst in his haste to get away. He claimed to have uncovered a significant history of threats and violence by Hurst against him, and to have other evidence of Hurst’s reputation to substantiate his professed fear of Hurst. The state moved to exclude evidence of Hurst’s bad character, since Johnston did not claim self-defense.
The trial court granted the state’s motion in limine, and the defense sought review, claiming the trial court’s ruling “gutted” the defense. This court |4granted relief and ordered the evidence admitted. However, that ruling was later reversed by the Louisiana Supreme Court, and the trial court’s ruling was reinstated.
The actions which gave rise to the contempt citation occurred during the cross-examination by Ms. Fournet of a state witnesses, Shane Miller, one of Hurst’s friends who was present during the confrontation. The questioning took place approximately two weeks after the reinstatement of the trial court’s ruling excluding evidence of Hurst’s bad character. Ms. Fournet attempted to elicit testimony regarding Miller’s participation in an earlier beating of Johnston by Hurst. She asked if Miller had been aware that Hurst was angry at Johnston. Miller acknowledged he had known Hurst was angry. Over the state’s objection, the court allowed counsel to continue to explore the inference that the meeting leading up to the fatal confrontation was not coincidental. However, the court cautioned counsel to stay away from evidence of Hurst’s character in accordance with the prior ruling. Shortly thereafter, counsel inquired why Miller turned his car around so that he could pull up beside Johnston’s vehicle after they had passed each other, Miller referred to an earlier confrontation between Johnston and Hurst at a local Burger King. When counsel attempted to explore that confrontation, the state objected, noting that evidence concerning the incident was covered by the ruling prohibiting introduction of character evidence. The court overruled the objection, but again advised counsel that she should not get into any specific facts reflecting on Hurst’s character. The court specifically warned counsel as follows:
*692 THE COURT: SURE. IF YOU ASK ANY QUESTIONS DIRECTLY ASKING HIM TO CONFIRM OR ELABORATE ON ANY CHARACTER EVIDENCE OF THE VICTIM — UH—OR THE EVIDENCE OF THE VICTIM’S CHARACTER, I WILL NOT HESITATE TO FIND YOU IN CONTEMPT BECAUSE I’M TELLING YOU I BELIEVE THAT IS A VIOLATION OF A PRIOR RULING AND SO I’M GOING TO OVERRULE ON THIS.
MS. FOURNET: I UNDERSTAND, YOUR HONOR.
| .^Thereafter, without objection, Miller testified that Johnston had attempted to shake hands and settle his differences with Hurst at the Burger King, but Hurst rebuffed his efforts. The fatal confrontation occurred soon afterward.
The trial was recessed for the day soon after that testimony because this court had granted a stay of the trial pending a decision on the state’s writ application concerning arrest records of state witnesses. The cross-examination of Shane Miller resumed the next day, with counsel questioning Miller’s motive for driving down the street where both Johnston and his friend Brent Trueil resided. As counsel asked Miller if he thought the Burger King incident was settled, the state again objected, and the court asked counsel to approach the bench. The following exchange then occurred:
THE COURT: ALL RIGHT. MR. MURRAY, GO AHEAD.
MR. MURRAY: WE SEEM TO BE GOING BACK OVER THE SAME IDEA WHAT WAS IN THE MIND — AGGRESSIVENESS AND DANGEROUSNESS AND THAT’S WHAT SHE ELICITING (SIC) FROM THIS MAN’S TESTIMONY WHICH WE’VE ALREADY BEEN TOLD SHE CANNOT GO INTO.
THE COURT: I AGREE. I KNOW . YOU THINK YOU ARE TREADING A THIN LINE, BUT THAT’S OVER THE LINE. I’M NOT GOING TO HOLD YOU IN CONTEMPT FOR THAT BECAUSE I KNOW IT’S CLOSE. BUT MY BELIEF IS THAT MR. MURRAY IS RIGHT ON THAT AND THAT’S WHY I SUSTAINED IT.
MS. FOURNET: JUST FOR THE RECORD, JUDGE, I WOULD LIKE TO STATE THAT THE REASON FOR THE QUESTION WAS TO SHOW THE WITNESSES (SIC) STATE OF MIND, NOT CORY HURST’S STATE OF MIND. WHAT HE WAS THINKING AND WHY HE DID WHAT HE DID.
THE COURT: YOU CAN ASK HIM WHAT HE THINKS. DON’T GET INTO CORY HURST, THOUGH. IF YOU SAY YOU KNOW IT WASN’T OVER, HE HAS ALREADY SAID HE HAD NOTHING TO DO WITH IT AS FAR AS HE WAS CONCERNED IT WAS BETWEEN OTHER PEOPLE. SO HIS STATE OF MIND REALLY ISN’T RELEVANT TO IT. THE ONLY REASONS I CAN — TO ASK A QUESTION TO TRY TO GET THE JURY TO KNOW THE STATE OF MIND OF MR. HURST, AND THAT IS SOMETHING THAT YOU ARE NOT GOING TO GO INTO.
Shane Miller then testified in detail about the confrontation. Defense counsel questioned him about the actions of Hurst’s friends immediately after Johnston ran over Hurst with the van, specifically their retaliation against Johnston’s friend Brent Trueil. Miller indicated that two of Hurst’s friends began to beat Trueil severely, and the state objected to the relevance of that [¿testimony. Although Ms. Fournet claimed that the evidence was part of the res gestae and was relevant to show the state of mind of Hurst’s friends, the court found the evidence was not relevant. Counsel objected and assigned error. Immediately thereafter, Ms. Fournet attempted to question Miller about the *693 reason Trueil could not get into the van. The state objected and the court sustained the objection. Ms. Fournet then asked if Miller had participated in the beating of Trueil. The state objected and the court asked counsel to approach the bench. The court then admonished counsel as follows:
THE COURT: I’M SORRY, IF YOU CAN’T GET HIM TO TESTIFY TO IT, YOU’RE GOING TO TESTIFY TO IT? I SUSTAINED THE OBJECTION. IT’S IRRELEVANT. DON’T GO INTO IT. THANK YOU VERY MUCH. END OF STORY. OBJECT, IF YOU WISH.
MS. FOURNET: I OBJECT.
THE COURT: THANK YOU.
The prosecutor then asked for sanctions against Ms. Fournet. However, the record does not reflect that the court responded to his request. After the bench conference was concluded, the following exchange occurred:
BY MS. FOURNET:
Q MR. MILLER, YOU SAID YESTERDAY THAT YOU DIDN’T HAVE ANYTHING IN PARTICULAR AGAINST JEREMIAH UNTIL THIS HAPPENED. IS THAT WHAT YOU SAID?
A YES, MA’AM.
Q OF COURSE, JEREMIAH WAS NOT A FRIEND OF YOURS PARTICULARLY, WAS HE?
A I HAVE KNOWN HIM PROBABLY LONGER THAN CORY BECAUSE HE LIVED IN MY NEIGHBORHOOD.
Q BUT CORY WAS YOUR GOOD FRIEND, WASN’T HE?
A CLOSER THAN JEREMIAH.
Q OKAY. AND YOU TOLD — YOU TOLD ME, AND I THINK YOU TOLD MR. MURRAY YESTERDAY, YOU’RE NOT GOING TO SHADE THE TRUTH TO TRY TO PROTECT YOUR FRIEND, CORY HURST; IS THAT CORRECT?
A YES, MA’AM.
Q BECAUSE YOU DIDN’T HAVE ANY DOG IN THAT HUNT I THINK WAS PRETTY MUCH YOUR POSITION, WASN’T IT?
A YES, MA’AM.
Q ISN’T IT A FACT, MR. MILLER-LET ME ASK YOU A COUPLE MORE QUESTIONS. YOU KNEW THAT YOUR GOOD FRIEND CORY HURST FOR SOME REASON DETESTED AND DESPISED JEREMIAH JOHNSTON, DIDN’T HE?
MR. MURRAY: OBJECTION, YOUR HONOR.
JjTHE COURT: COUNSEL, APPROACH.
(WHEREUPON A BENCH CONFERENCE WAS BEGUN.)
THE COURT: YES, SIR, MR. MURRAY?
MR. MURRAY: WE SEEM TO BE GOING BACK TO THE SAME AREA OF—
THE COURT: DEFINITELY CHARACTER OF THE VICTIM.
THE REPORTER: MR. MURRAY, DON’T TAP YOUR FINGERS.
THE COURT: IT’S DEFINITELY CHARACTER OF THE VICTIM. YOU’RE NOT ALLOWED TO GO THERE.
MS. FOURNET: JUDGE, I’M TRYING TO ESTABLISH BIAS ON THE PART OF THIS WITNESS.
THE COURT: AS CHARACTER OF THE VICTIM, YOU’RE NOT ALLOWED TO DO THAT.
MS. FOURNET: I OBJECT AND ASSIGN ERROR.
The bench conference concluded, and questioning resumed as follows:
BY MS. FOURNET:
Q MR. MILLER, ISN’T IT A FACT THAT YOU, SHANE MIL *694 LER, NOT COINCIDENTALLY PULLED UP IN THE CRACKER BARREL AND OBSERVED THIS BOY TO BE BEATEN BY YOUR FRIEND CORY HURST—
MR. MURRAY: OBJECTION. THE COURT: COUNSEL APPROACH, PLEASE.. ,
Another bench conference was begun, as follows:
MR.' MURRAY: YOUR HONOR—
THE COURT: THANK YOU, MR. MURRAY, I CAN DO THIS ON MY OWN. MA’AM, YOU HAVE GONE ACROSS THE LINE. I FIND YOU IN CONTEMPT OF ■ COURT, I’M GOING TO FINE YOU ONE HUNDRED DOLLARS.
MS. FOURNET: I HAVE COUNSEL HERE TO SPEAK FOR ME, YOUR HONOR.
The court then recessed the jury and conducted a hearing on the contempt citation, during which Ms. Fournet was represented by Anthony Marabella. Ms. Fournet testified that she had information indicating that Shane Miller was one of a group of people at the scene of an earlier beating of Johnston by Hurst and another one of his friends. Counsel further contended that, notwithstanding his testimony that he bore no animus against Johnston, Miller was at the scene either during or immediately after that beating, and his presence there was not coincidental. Ms. Fournet further testified that she had consulted with Mr. Marabella and Mike Small, another criminal defense attorney, to confirm that she had a good faith basis for asking the question .without violating the ruling of the Louisiana Supreme Court. Ms. Fournet | ^contended, that she had made an informed decision on her client’s behalf to explore the bias of the witness and she believed she would be derelict in her professional duty if she did not explore it. Mr. Marabella also spoke on Ms. Fournet’s behalf, contending the questions were specifically designed to explore the bias of the witness.
Thereafter, the court noted that evidence of the specific incident in question had been part of the defense proffer excluded by the trial court and considered by the Louisiana Supreme Court in its reinstatement of the trial court’s ruling. The court found that Ms. Fournet was attempting to place the actions of Cory Hurst before the jury through testimony about Shane Miller’s conduct during or immediately after Hurst’s previous beating of Johnston, that her efforts to elicit the testimony were not in good faith, and that counsel’s actions were directly contrary to the instructions, of the Louisiana Supreme Court and the trial court. The court noted that counsel had been warned repeatedly about her conduct, notwithstanding that both parties were notified on the first day of the trial that 'either party would be sanctioned after only one warning.
Ms. Fournet claims that her actions were not contumacious because she was not attempting to introduce evidence of the victim’s character in contravention of the court’s order. Rather, she claims her purpose was to show that Shane Miller was a biased witness. To that end, she intended to elicit testimony that Miller was present when Hurst attacked Johnston at a local restaurant and that Miller’s presence during the beating was not coincidental. Thus, she claimed her questions sought evidence that was independently relevant, although it was possibly related to the evidence previously excluded. In other words, although evidence of Hurst’s character was specifically excluded by the court and thus defense counsel could not introduce evidence that Hurst beat Johnston, counsel believed she could elicit testimony that Miller was present when Hurst beat Johnston as evidence of Miller’s bias. Since counsel believed (based on her own legal analysis and the professional opinions of other criminal defense attorneys she consulted) that the evidence |9was admissi *695 ble on those grounds, she claims her actions were not in contravention of the court’s order and were not taken in contempt of court.
Although counsel contends she did not believe the evidence she sought to elicit was covered by the trial court’s order because it was directed to the witness’s bias and not the victim’s character, it is clear that the court disagreed with her assessment. Regardless of the validity of the court’s order, counsel refused to heed repeated warnings to stay away from any evidence that the court ordered to be excluded. In concluding that Ms. Fournet’s questioning of Shane Miller was a deliberate attempt to introduce evidence the court had ordered excluded, we have reviewed counsel’s conduct leading to the contempt citation. Despite clear instructions by the court to stay away from certain evidence of the victim’s character, counsel: (1) asked if Miller was aware that Hurst was angry at the defendant; (2) attempted to elicit evidence of an earlier altercation between Hurst and Johnston at a Burger King, although (as the trial court noted) Miller “already said he had nothing to do with it as far as he was concerned it was between other people”; (3) repeatedly inquired about actions by Hurst’s Mends after Hurst had been struck by the van; and (4) inquired if Miller knew Hurst “for some reason detested and despised Jeremiah Johnston.”
We are persuaded that counsel intended to present evidence to the jury in violation of the trial court’s specific prohibition against introduction of that evidence. In fact, Ms. Fournet’s actions appear to have invited the contempt citation, which the court finally issued after numerous warnings. We conclude that Ms. Fournet’s conduct constituted a direct violation of the court’s order and a direct contempt of court. The fair and efficient administration of justice requires that respect for the dignity of the courts be maintained and that willful disobedience or deliberate defiance of the court’s authority be punished. In re Milkovich, 493 So.2d at 1199. The trial court did not abuse its discretion in holding Ms. Fournet in contempt.
ImFor the foregoing reasons, relator’s application for supervisory relief is denied.
WRIT DENIED.
KUHN, J., concurs and assigns reasons.
WEIMER, J., concurs and assigns reasons.