347 So.2d 494 (1977)
CITY OF LAKE CHARLES
v.
Ernest BELL.
CITY OF LAKE CHARLES
v.
HARDY M. PARKERSON.
No. 58917.
Supreme Court of Louisiana.
June 20, 1977.
*495 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., J. Fred Patin, City Prosecutor, for plaintiff-respondent.
Hardy M. Parkerson, in pro. per.
SUMMERS, Justice.
Certiorari was granted on the relation of Hardy M. Parkerson, Esquire, Attorney at Law, to review the proceeding in the Lake Charles City Court wherein the trial judge held him guilty of contempt of court and sentenced him to serve twenty-four hours in jail.
The matter arose during the prosecution in the City Court of the case of City of Lake Charles v. Ernest Bell. Relator was representing the defendant Bell who had been convicted on two charges of battery on police officers in the Lake Charles City Court on May 24, 1976 and June 7, 1976, respectively. A transcript of the testimony at these trials is on file in this proceeding but the validity of those convictions is not an issue here.
Approximately ten days beforehand the trial judge, the city prosecutor and relator agreed to try still another charge against Bell on November 15, 1976. This latter charge was for committing a battery upon Officer J. Gayle, it being the third case against Bell to be tried as a result of a series of seven charges.
However, on the day set for the trial relator filed a petition in the United States District Court for removal of the case to that Court from the City Court of Lake Charles "pursuant to 28 U.S.C.A. 1443". The petition alleged that the pending prosecutions against Bell in the City Court involved charges for simple battery (2 counts); being drunk; resisting arrest; and carrying a concealed weapon. It was alleged that Bell was unable to obtain his equal civil rights because the City was attempting to twice place him in jeopardy; and he would be denied the presumption of innocence because the same judge who would try the pending cases had already heard the evidence in two previous trials arising out of the same incident.
Notice of the filing of this removal petition was received by the prosecutor and the clerk of the city court on the morning of the day the case was set for trial, the trial being set for two o'clock that afternoon. When court convened that afternoon, relator urged in the presence of the Court that the filing of the removal petition had the effect of an automatic stay of all proceedings in the City Court, and the City Court was without jurisdiction to try the case. He was not prepared, however, to furnish the authority for his position beyond a reference to Section 1446 of Title 28 of the United States Code Annotated, which he could not produce. The city judge and the city prosecutor were of the opinion a stay order should issue from the Federal District Court to divest the City Court of jurisdiction and that the stay was not automatic. After extensive argument relator requested a delay of thirty minutes to get the book containing the pertinent Act of Congress, but by this time the afternoon was well advanced and the city prosecutor and trial judge, not being convinced that relator's position was well-founded, insisted that the trial proceed.
Relator then announced that he would not participate in the trial, and would not *496 defend Bell. Bell would have to be tried without the benefit of counsel, he said. Bell, however, declared that relator was his lawyer and he did not want to be tried without his lawyer.
Despite the trial judge's entreaty, relator refused to go to trial. When the case was announced ready for trial relator again declared that he would not defend Bell on the charge, and he moved to withdraw as counsel. Whereupon, the trial judge addressed relator:
"Stand up, Mr. Parkerson. You are the counsel representing this defendant. This case has been set for trial. You're in cognizance of the fact that it has been set for trial. I think that your motions are dilatory,[1] and I am just ordering you to go to trial to represent this client. Now, if you refuse to do so, I am going to hold you in contempt of Court."
In disregard of this admonition relator continued to argue that the City Court was without jurisdiction because the case had been removed to the Federal Court. After repeated requests from the trial judge that he try the case, the judge stated that relator filed his removal petition at the last minute to catch the judge unprepared and to delay the case again. Relator was then held in contempt of court for the reasons found by the trial judge to be "adequately stated and adequately transcribed." He was sentenced to serve 24 hours in jail. La.Code Crim.Pro. arts. 16, 17, 20-25. The trial was then continued indefinitely.
It is unmistakably clear to this Court that the trial judge in the City Court honestly and in good faith, believed that the removal petition did not have the automatic effect of staying all proceedings in his court. He believed, as he stated, that the Federal court must order the stay. The city prosecutor argued to the same effect at the time, although he now concedes that the stay was automatic.
It is a well-accepted principle in proceedings for criminal contempt that orders of the trial judge in the conduct of trials must be obeyed, irrespective of the ultimate validity of the order, unless the trial judge stays the order or ruling to permit a review. The correctness of a court order or ruling is not contested by deciding to willfully disobey it, without suffering the consequence of that disobedience. Respect for judicial process is a small price for the civilizing hand of law. Absent a showing of transparent invalidity or patent frivolity surrounding the order, it must be obeyed until stayed or reversed by orderly review. See United States v. Dickinson, 465 F.2d 496 (5th Cir. 1972).
Inviolability of court orders is unique among governmental commands. When legislators or executive agenciesState or Federalhave transgressed constitutional or statutory bounds, their mandates need not be obeyed. Violators, of course, risk criminal sanctions if their predictions of illegality fail, but if the directive is invalid, it may be disregarded with impunity. It is only the orders of judicial authorities which must be tested in the courts before deliberate transgression can be excused on an eventual determination that the order was invalid. United States v. Dickinson,, supra.
The criminal contempt exception requiring compliance with court orders, while invalid non-judicial directives may be disregarded, is not the product of self-protection or arrogance of judges. Rather it is born of an experience-proven recognition that this rule is essential for the system to work. Judges are charged with the final responsibility to adjudicate legal disputes. Determinations take the form of orders. The problem is unique to the judiciary because of its particular role. Disobedience to a legislative pronouncement in no way interferes with the legislature's ability to pass laws. The dispute is simply pursued in the judiciary, and the legislature is free to discharge its responsibilities despite the disregard of its statutes. Law enforcement is also not brought to a standstill by failure to *497 convict those who disregard the unconstitutional commands of policemen.
On the other hand, the deliberate refusal to obey an order of court without testing its validity through established processes requires further action by the judiciary, directly affecting its ability to discharge its duties and responsibilities. While it should be sparingly used, the power of courts to punish for contempt is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the judicial process. Without this authority courts would be mere boards of arbitration whose orders, ruling, judgments and decrees would be only advisory. United States v. Dickinson, supra. A court's power to decide includes the power to decide wrongly.
The rule that invalid court orders must nevertheless be obeyed until set aside presupposes the existence of at least three conditions: 1) the court issuing the order must enjoy subject matter and personal jurisdiction over the controversy; 2) adequate and effective remedies must be available for orderly review of the challenged ruling; and 3) the order must not require an irretrievable surrender of constitutional guarantees.
The threshold inquiry is, of course, jurisdiction. And in considering this question the conclusion is obvious that the city court was without jurisdiction to cite relator for contempt for failure to try a case over which the city court was without jurisdiction. This finding makes consideration of conditions 2) and 3) unnecessary.
Section 1443 of Title 28 of the United States Code permits the filing of a removal petition:
"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."
And Section 1446(e) of that same Title sets forth the effect of such a filing:
* * * * * *
"(e) Promptly after the filing of such petition and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."
* * * * * *
Section 1446(e) plainly states that once the petition for removal has been filed in federal court and written notice is given thereof to all parties and the clerk of the state court, the removal takes place and the state court "shall proceed no further unless and until the case is remanded." This means that the city court jurisdiction is either at an end, or is suspended until the federal court remands. In either instance the state court "shall proceed no further." Other provisions bolster this conclusion. Thus, Section 1447(c), dealing with remand, states that the clerk of the federal district court shall mail a certified copy of the order of remand to the clerk of the state court; and that "[t]he State court may thereupon proceed with such case." Section 1450 further indicates loss of jurisdiction by the state court by its provisions that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the [federal] district court."
In discussing Section 1446(e) the Court in Berberian v. Gibney, 514 F.2d 790 (1st Cir. 1975), said, "It is clear that once a removal petition has been filed and proper notice *498 given adverse parties and the state court, the [federal] district court has exclusive jurisdiction over the case." See also Georgia v. Rachel, 384 U.S. 780, 797 n. 27, 86 S.Ct. 1783, 1793, 16 L.Ed.2d 925 (1966), where the Court speaks of the removal being "effected" after notice is given to the parties and the state court and sets forth that "state court proceedings cease unless the case is remanded." Cf. Jackson v. State, 337 So.2d 1281 (Ala.1976). 1A Moore's Federal Practice, § 0.168[3.-8].
The authorities supporting the conclusion that the removal divests the state court of jurisdiction have been fully explored in State ex rel. Gremillion v. National Association for the Advancement of Colored People et al., 90 So.2d 884 (La.App.1956), and more recently in Styers v. Pico, Inc., 236 Ga. 258, 223 S.E.2d 656 (1976).
On the basis of this overwhelming authority, the city court was without authority to proceed with the trial against Bell. For this reason, that court was without jurisdiction to order relator to defend his client at such a trial and, consequently, the city court was without authority to cite him for contempt.
For the reasons assigned, the ruling adjudging relator in contempt of court is declared null and void and without effect.
NOTES
[1] Subsequently, on January 19, 1977, the judge of the Federal District Court for the Western District of Louisiana remanded the case to the Lake Charles City Court.