GERSTEN, J.
The petitioner, the Department of Children and Families (“DCF”), petitions for writ of prohibition, or alternatively for writ of certiorari or non-final appeal, seeking to quash an order finding good cause to review the appropriateness of adoptive placement of a child and to prohibit change of placement pending a hearing. We deny the petition.
Child, J.C. (“J.C.”), was born cocaine exposed in November of 1998 and was placed in DCF’s physical custody. In December of 1998, J.C. was released to the physical custody of Geraldine Scott (“Geraldine”), a non-relative. J.C.’s father was a friend of Geraldine’s and asked her to *488 take custody of the baby. Geraldine agreed and indicated her desire to adopt J.C.
In 1999, J.C.’s father’s parental rights were terminated. His mother’s parental rights were terminated in August of 2000. The trial judge’s findings in support of termination noted:
The Child has the ability to form a significant relationship with a parental substitute, and it is likely that the Child will enter a more stable and permanent family relationship as a result of permanent termination of parental rights and duties. The Child is currently placed with Ms. Geraldine Scott, who wishes to adopt the child.
After Geraldine initiated the adoption paperwork, the DCF filed a judicial review social study report which advised the trial court that Geraldine was providing a stable and nurturing home' for J.C. The DCF’s report further noted that J.C. was in the process of being adopted and had developed a close and loving relationship with Geraldine.
In November of 2000, Geraldine and J.C. moved to Virginia with the approval of DCF. The DCF then requested that the Department of Social Services in Virginia perform an adoption home study under the Interstate Compact On The Placement Of Children (“ICPC”).[1] The Virginia home study report questioned Geraldine’s-financial ability to support J.C. and noted that Geraldine was not receiving financial assistance from the State of Florida. Significantly, the report stated “it is apparent that a definite bond between [J.C. and Geraldine] exists” and that “separating [the child] from [Geraldine] would have a mutually negative emotional affect on both.” The report concluded that Geraldine required financial adoption assistance in order to maintain the placement. In June of 2001, the state of Virginia declined to accept adoptive placement of J.C. with Geraldine in that state, based upon concerns with Geraldine’s financial status.
Sincé the state of Virginia did not accept the placement, the DCF decided to remove J.C. from Geraldine. In August of 2001, while Geraldine was in Florida on vacation, the DCF requested that she come into the office with the child. J.C. was then taken away from Geraldine without notice or warning. A few days later, the DCF filed a detention petition, advising the trial court that it was seeking a change of custody and that J.C. had already been placed with a different guardian. The court found there was no probable cause to remove the child from Geraldine, but granted the DCF’s request for an evidentiary hearing and a stay.
The evidentiary hearing was held on August 8, 2001. During the course of the *489 hearing, the DCF stated it was withdrawing both the detention petition and its motion to change custody, contending it had exclusive jurisdiction to take J.C. away from Geraldine in order to choose adoptive parents. The Guardian Ad Litem then moved ore terms for the court to conduct a good cause hearing to review the appropriateness of the placement under Section 39.812(4), Florida Statutes (2001).[2] The trial court granted the motion, reaffirmed its probable cause findings, ordered a childhood intervention specialist to see the child immediately, and ordered DCF to return the child to Geraldine pending the subsequent appropriateness hearing.
On August 30, 2001, an amended order was entered, which explained the basis for finding good cause to review the appropriateness of the adoptive placement and which detailed the facts supporting the trial court’s decision to prohibit change of placement pending hearing. Judge Leder-man’s well-reasoned and detailed order found as follows:
(1) the Child which is now over two and a half years old, has lived since he was two months old with Ms. Scott, (2) the Child is emotionally bonded to Ms. Scott, who has provided a loving, nurturing home for the Child, (3) Ms. Scott believed that she was the pre-adoptive parent of the Child, (4) previous judicial placement review orders have found this home to be an appropriate placement, (5) the Court has a reasonable concern that the well being of the Child will be endangered by taking him from the only mother he has ever known and placing him with strangers (6) the adoption home study from the City of Portsmouth, dated June 1, 2001, did not recommend removal of the child, (7) the court is alarmed by the precipitous and insensitive manner in which the Department removed this child from Ms. Scott and by the Department’s failure to recognize the importance of bonding and attachment in early childhood relationships, (8) the court is unable to understand why the Department of Children and Families chose to take the drastic and harmful action of abruptly removing the child from the woman who had appropriately and lovingly cared for him for two and a half years rather than make reasonable efforts to work with Ms. Scott and provide services and assistance to Ms. Scott to remedy the Department’s concern about her finances, (9) the court, charged with the safeguarding of the health, safety and well being of this Child, has serious concerns about the actions of the Department of Children and Families in this case and feels compelled based on all the foregoing facts to “review the appropriateness of the adoptive placement of the Child” pursuant to Florida Law. Based on the law, Florida Department of Children and Families v. In the Interest of MAP., 788 So.2d 982 (Fla. 3d DCA 2001) and the aforesaid facts that form the basis for the Court’s genuine concern about the potential harm to the Child, this Court orders that the Child be returned to Ms. Scott with whom he has lived for virtually his entire life and *490 prohibits the Department of Children and Families from changing the child’s placement, pending the outcome of the hearing to “review the appropriateness of the adoptive placement of the Child” scheduled for October 1, 2001, pursuant to F.S. 39.812(4).
The DCF thereafter filed this petition, essentially arguing the trial court acted in excess of its jurisdiction by preventing the DCF from changing J.C.’s placement and in maintaining the status quo for the child pending review of the appropriateness of adoptive placement under Chapter 39.
Under Chapter 39, the judicial and executive branches exercise concurrent jurisdiction over the welfare of foster children who have been placed in DCF’s custody. See Simms v. State Dep’t of Health and Rehab. Servs., 641 So.2d 957 (Fla. 3d DCA), review denied, 649 So.2d 870 (Fla.1994).[3] As part of its legislatively mandat ed review authority, the judiciary is specifically authorized to exercise its review powers in analyzing the appropriateness of a DCF proposed adoptive placement. See § 39.812(4), Fla. Stat. (2001). See also, §§ 39.013(2), 39.812, 39.813, Fla. Stat. (2001).
This is evidenced by the plain language of Section 39.812(4), which states that the court “shall retain jurisdiction over any child placed in the custody of the department until the child is adopted” and provides for continuing jurisdiction so that “the court may review the appropriateness of the adoptive placement of the child.” § 39.812(4), Fla. Stat. (2001). The language of Section 39.812(4) is clear and must be given its plain and ordinary meaning. See Canida v. Canida, 751 So.2d 647 (Fla. 3d DCA 1999), review denied, 767 So.2d 455 (Fla.2000). The plain and ordinary meaning of Section 39.812(4) provides express statutory authority for the trial court to exercise judicial review of the appropriateness of adoptive placement. § 39.812(4), Fla. Stat. (2001).
In the context of exercising this review power, it is fundamentally recognized that our trial courts possess inherent authority to maintain the status quo and to prevent irreparable harm. See e.g. Art. V, Sec. 4, Fla. Const. (“The circuit courts shall have ... the power to issue ... all writs necessary or proper to complete exercise of their jurisdiction”); State Dep’t of Health and Rehab. Servs. v. Hollis, 439 So.2d 947 (Fla. 1st DCA 1983)(courts have inherent power to do all things reasonably necessary for the administration of justice). Especially in the context of children, our trial courts have a continuing responsibility to vigilantly protect the welfare and best interests of the child. See Brown v. Ripley, 119 So.2d 712 (Fla. 1st DCA 1960).
*491 Here, the trial judge was faced with a situation where a child had been placed with a loving and competent caregiver since birth, and thereafter under suspect circumstances was abruptly removed from that caregiver, the only mother he had ever known, to be placed with strangers.[4] It is presumptively in the best interests of a child to remain in the home where he or she has spent the majority of his or her life. See Rumph v. V.D., 667 So.2d 998 (Fla. 3d DCA 1996); S.J. ex rel. M.W. v. W.L., 765 So.2d 753 (Fla. 4th DCA 2000). Clearly there was no error in the trial court’s finding that it was in the best interests of J.C. to remain with Geraldine pending a determination of the appropriateness of J.C.’s adoptive placement.[5]
lí is difficult to understand the DCF’s position in this regard, since the risk of harm in removing J.C. from Geraldine at this stage of the proceedings is obviously greater than maintaining the status quo.[6] In any event, we find no merit to the issues raised by the DCF in this proceeding and write further to clarify that attempts to circumvent a trial judge’s authority through misuse of the appellate review process will not be countenanced.
Prohibition is an extraordinary remedy which will only be granted to restrain the exercise of judicial power where none exists. See Klein v. Smith, 366 So.2d 1206 (Fla. 3d DCA 1979). It cannot be used to revoke an order that has already *492 been entered or to prevent the lower court from determining questions of jurisdiction. See Hamlin v. East Coast Properties, Inc., 616 So.2d 1175 (Fla. 1st DCA 1993); University of Miami v. Klein, 603 So.2d 651 (Fla. 3d DCA 1992). The DCF’s writ improperly seeks prohibition with regard to a previously entered (August 30, 2001) order and impermissibly seeks to divest the trial court of its inherent authority to determine the question of its own jurisdiction.
Prohibition is an extraordinary writ that is “meant to be very narrow in scope and operation and must be employed with caution and utilized only in emergency cases to prevent an impending' injury where there is no other appropriate and adequate legal remedy.” Mandico v. Taos Construction, 605 So.2d 850, 853 (Fla.1992). This Court will not condone use of the extraordinary writ procedure to circumvent established appellate rules.
More importantly, this Court will not condone an attempt to frustrate the trial court’s exercise of its statutory authority to protect a young child from being abruptly taken away from the only parent he has ever known, until the appropriateness of so doing may be ascertained. Accordingly, we deny the DCF’s petition in all respects.
Petition denied.

. The Interstate Compact on the Placement of Children ("ICPC”) enacted by Section 409.401, Florida Statutes (2001), requires DCF to send written notification to a receiving state that "the proposed placement does not appear to be contrary to the interests of the child" prior to authorizing a child to be sent to the receiving state. See § 409.401, Art. 111(d), Fla. Stat. (2001). See also Dep’t of Children and Families v. Benway, 745 So.2d 437 (Fla. 5th DCA 1999)("A.B. should remain in Florida until the Vermont authorities indicate their agreement to A.B.'s placement in Vermont”); Matter of Jarrett, 230 A.D.2d 513, 660 N.Y.S.2d 916, 920 (1997) (ICPC requires prior cooperative agreement between states to limit interstate shifting of child care costs). The purpose of the ICPC is to "assure that placement will be in the child’s best interest, and to preclude the sending State from exporting its foster care responsibilities to a receiving State.” Williams v. Glass, 245 A.D.2d 66, 664 N.Y.S.2d 792, 793 (1997). We note that although the Florida DCF did authorize J.C.'s move to Virginia, it apparently did so without receiving prior approval from the state of Virginia, in violation of the ICPC.

. Section 39.812(4), Florida Statutes (2001) provides:
The court shall retain jurisdiction over any child placed in the custody of the department until the child is adopted. After custody of a child for subsequent adoption has been given to the department, the court has jurisdiction for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown by the guardian ad litem for the child, the court may review the appropriateness of the adoptive placement of the child.

. This grant of concurrent power furthers the state’s compelling interest in protecting children, based upon the recognition that there are instances in which the best interests of the child and the DCF may differ. See Simms v. State Dep’t of Health and Rehab. Servs., 641 So.2d at 957; Norris v. Spencer, 568 So.2d 1316 (Fla. 5th DCA 1990). Judicial review is an important part of the "checks and balances” process and serves to ensure accountability from the DCF;
We cannot assume that the legislature intended the court to conduct a meaningless review. Therefore, we must conclude that the purpose of judicial review is to assure that the Department is complying with reasonable efforts to assure the protection of [a] child and to promote ... adoptive placement as is the Department's duty. Where the court receives evidence that the Department is not complying with its duties and that the child is not being afforded the services and protections which the legislature expressly provided, then the trial court can act and order the Department to submit a plan which provides those services and will promote the child’s adoption.
In The Interest of L.W., 615 So.2d 834, 838 (Fla. 4th DCA 1993).

. DCF continually references Geraldine’s low finances as the main support for its decision to remove J.C., and subsequently claimed it feared Geraldine would flee with the child. However, Geraldine’s financial status remained relatively unchanged since J.C. was first placed with her three years ago. DCF was fully aware during this entire time period that Geraldine was unemployed and had no real source of income. Despite this fact, DCF continued to give Geraldine satisfactory status reports and even authorized J.C.’s removal from Florida to Virginia. Moreover, there were no indications at the time of removal that Geraldine would flee. She had in fact always followed proper procedures and adhered to all of DCF's requests. For these reasons and the many others discussed in this opinion, we disagree with the dissent's suggestion that it was improper to use the phrase, "under suspect circumstances,” in describing the events surrounding J.C.’s removal.

. Trial courts have a duty to make placement decisions in the best interest of the child and to recognize the importance of bonding and attachments in early childhood relationships. See Di Giorgio v. Di Giorgio, 153 Fla. 24, 13 So.2d 596 (Fla.1943). As noted in In the Interest of D.J.S., 563 So.2d 655, 670 (Fla. 1st DCA 1990):
It is a matter of human knowledge that every day in the life of a small child is important to his physical, mental, and emotional development, The Legislature has expressly recognized the need for prompt disposition of matters involving children in foster care and made clear its intent that in matters of permanent placement, "the best interests of the child's moral, emotional, mental, and physical welfare” is of paramount concern.
See also Tenny v. Tenny, 147 Fla. 672, 3 So.2d 375 (1941)(trial courts are open at all times to hear matters concerning children, and for the purpose of "making and entering orders and decrees affecting or preserving the welfare of children”).

.As we have already maintained, the issue before us involves J.C.’s temporary placement pending a future hearing, where J.C.’s permanent placement will be determined. The questions of who is best suited to adopt J.C. and DCF’s authority to choose J.C.’s adoptive parents are not presently before this Court. For this reason, the recent case, Florida Dep’t of Children and Families v. Adoption of B.G.J., 819 So.2d 984 (Fla. 4th DCA 2002), as cited by the dissent, does not apply in this case. The issue in Adoption of B.GJ. dealt with a trial court’s power to intercede and override the decision making process at a later stage of the proceedings than here. Here, since we do not address the question of who would be best suited to adopt J.C., the dissent's citation to and reliance on Adoption of B.GJ., is inapplicable.