# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-350**
**consolidated with 12-349**


**JOHN FREEMAN, ET AL.**

**VERSUS**

**L. J. DUREL, JR., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20111843
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Marc T. Amy, J. David Painter, and Phyllis M. Keaty, Judges.


**Cooks, J., dissents and assigns written reasons.**

**REVERSED.**

**Ernest L. Johnson**
**Atorney at Law**
**3313 Government Street, Suite G**
**Baton Rouge, LA 70806**
**(225) 334-7490**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **John Freeman**
    **Joseph Dennis**
    **Leon Simmons**

**Alfreda Tillman Bester**
**Tillman Bester & Associates**
**4014 Salem Drive**
**Baton Rouge, LA 70814**
**(225) 273-9449**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **John Freeman**
 **Joseph Dennis**
 **Leon Simmons**

**Charles L. Patin, Jr.**
**Kean Miller, LLP**
**400 Convention Street, Suite 700**
**Baton Rouge, LA 70802**
**(225) 382-3430**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **L. J. Durel, Jr.**
 **Lafayette City-Parish Council**

**Michael D. Hebert**
**City-Parish Attorney**
**Post Office Box 4017-C**
**Lafayette, LA 70502**
**(337) 232-3929**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **L. J. Durel, Jr.**
 **Lafayette City-Parish Council**

**Kay A. Theunissen**
**Mahtook & Lafleur**
**600 Jefferson Street, Suite 1000**
**P. O. Box 3605**
**Lafayette, LA 70502**
**(337) 266-2189**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **L. J. Durel, Jr.**
 **Lafayette City-Parish Council**

**KEATY, Judge.**

For the reasons set forth in the companion case in this consolidated matter, *Freeman v. Durel*, 12-349 (La.App. 3 Cir. __/__/12), __ So.3d __, we reverse the trial court's decision reinstating Plaintiffs as commissioners of the Housing Authority of the City of Lafayette. We further reverse the trial court's judgment in favor of Plaintiffs declaring Defendant, Joey Durel, in contempt of court for Durel's decision to remove Plaintiffs as commissioners of the Housing Authority of the City of Lafayette. We further reverse the trial court's reinstatement of Plaintiffs and its finding Durel in contempt of court as moot.

**REVERSED.**

COURT OF APPEAL

THIRD CIRCUIT

STATE OF LOUISIANA


12-349 c/w 12-350

JOHN FREEMAN, ET AL.

VERSUS

L.J. DUREL, JR. ET AL.

Cooks J., Dissents.


John Freeman, Joseph Dennis, and Leon Simmons (Plaintiffs) were Commissioners for the Housing Authority for the City of Lafayette (HACL) who were removed from office by the Lafayette City-Parish President, Joey Durel, Jr. (Durel) for "neglect of duty" and "misconduct in office." *The Commissioners of HACL serve without compensation.* Plaintiffs were first removed from office by Durel on August 27, 2010. They appealed their removal to the Lafayette City-Parish Council (Council) who, after an administrative hearing, upheld the removal. Plaintiffs then appealed the Council's decision to the Fifteenth Judicial District Court which overturned the removal and ordered Plaintiffs reinstated. **No one appealed that decision, and it has long been a final judicial decision signed on October 27, 2010.**

Subsequent to the first removal by Durel, but prior to the signing of the October 27, 2010 judgment, Durel "removed" Plaintiffs a second time for "neglect of duty" and "misconduct in office" asserting as the **only basis** for that removal five alleged violations of Louisiana's Open Meetings Law. These violations allegedly occurred on October 26, 2010. Plaintiffs filed a "Motion For Contempt of Court Against Defendants, Reinstatement of Movers, and Stay of Action to

1

Remove." This pleading was filed in the first suit by Plaintiffs in which judgment was rendered on October 27, 2010 by Judge Rubin. Defendants filed a "Motion For Continuance and/or Stay" and filed a "Motion To Dismiss" which was *sua sponte* denied. Plaintiffs timely filed a "Petition for Appeal of Lafayette City Council March 1, 2011 decision," affirming Durel's second removal, which suit was assigned a new docket number, 2011-1843, and randomly allotted to Judge Broussard. Plaintiffs then filed a motion to consolidate the first suit (which included the contempt rule before Judge Rubin) with the appeal of the Council's second affirmance of the removal. Judge Broussard granted the order consolidating the two proceedings, deferring to Judge Rubin. Defendants then filed an exception of "Improper Cumulation of Actions." This exception was also denied. In the midst of the on-going battle to remove these Commissioners, the U.S. Dept. of Housing and Urban Development (HUD) issued a written notice of default, as per the provisions of U.S.C.A. 42:1437(d), taking active control of HACL and stating that neither the Plaintiffs nor the Commissioners appointed as their replacements were recognized by HUD as having any authority over HACL as of March 28, 2011, *until HUD relinquishes possession of the Housing Authority*. HUD's decision to take over HACL was in part precipitated by its concern for HACL's ongoing operation in the face of continued litigation involving successive attempts by Durel to remove the Commissioners and Durel's interim board's failure to provide requested audit information and other records. Not surprising, Defendants then filed a "Preemptory Exception of Failure to Join Indispensable Party" alleging HUD was now an indispensable party to the pending proceedings. The trial court eventually found Durel and the Council again acted arbitrarily and capriciously in removing Plaintiffs and reversed their decision. The trial court also held Durel in contempt of court for his second attempt to remove Plaintiffs. Defendants appeal the trial court's judgment asserting that Durel and the Council properly removed

Plaintiffs; reinstatement of Plaintiffs was error; and it was error to hold Durel in contempt.

## LEGAL ANALYSIS

The majority, with deliberate purpose and forethought, dances around settled law and jurisprudence before resting its decision on a legal matter neither it or Durel and the City Council had the authority to entertain. In a separate proceeding, Judge Planchard , appointed *ad hoc* by the Louisiana State Supreme Court, found the Commissioners did not violate the Open Meetings Law. The District Attorney for Lafayette Parish did not seek review of that decision and the majority in this case admits that determination also is final. The law has long been settled that subject matter jurisdiction once vested by the legislature can never be divested or conferred by acquiescence or waiver.

> Jurisdiction over the subject matter of a controversy is "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted," La.Code Civ. Proc. Art. 2. Subject matter jurisdiction is created by the constitution or legislative enactment, see, e.g., La.Const. Art. 5, and cannot be waived or conferred by the consent of the parties, see La.Code Civ. Proc. Arts. 3 & 925.

*Amin v. Bakhaty*, 01-1967, p. 6, (La. 10/19/01), 798 So.2d 75, 80.

Our review of this case should have ended here. Neither Durel nor the Lafayette City Council had authority to take any course of action against the Commissioners based on their independent findings that they violated the Open Meetings Law; and it goes without citation that they had no authority to override a district court's decision finding the contrary. When this fatal procedural defect was called to the majority's attention its response was not to embrace a rule of law that has long been settled but to find ways to "chicken dance" around it. The majority's dance goes like this – since Plaintiffs requested a hearing before the

3

Council it is they who put the Open Meetings Law question before the Council and not Durel; *ipso*, there is no merit to any contention that we too lack jurisdiction to review a "subject matter" originating in the wrong tribunal. Recognizing that acquiescence or waiver never suffices to divest or confer jurisdiction, my colleagues create a "it's-your-own-fault-exception" never before mentioned in the law or jurisprudence of this State. Voila', "end of discussion" they proclaimed as they rush to review the merits of this case.

The legislature has not seen fit to vest administrative bodies, specifically the City Council of Lafayette and Durel acting as City-Parish President, with authority to decide whether a violation of the Open Meetings Law has occurred and to impose the punishment statutorily defined. Correctly so, counsel for these parties at oral argument acknowledged that her clients did not have authority to decide issues involving the Open Meetings Law. Faced with this quagmire, she simply said, to paraphrase "but, they were fired for neglect of duty and misconduct in office."[1] The legislature vested original jurisdiction exclusively in the District Courts of this State. In this case, the District Attorney for the Parish of Lafayette, after urging by Durel, filed a civil suit naming the present Appellees as defendants and alleging the *same violations* contained in the grounds used by Durel to terminate the Commissioners. That matter was assigned to Judge Planchard and fully tried by him in a court of competent jurisdiction. Durel's second attempt to remove the Commissioners **solely** based on conduct that the District Court found did not violate the Open Meetings Law ran afoul of law and the limited authority vested with him and the Lafayette City Council.

---

[1] Louisiana Revised Statute 40:537 declares that the generic use of misconduct in office and neglect of duty alone is not enough. The appointing authority "*shall* set forth the charges against [a housing commissioner]." La. R.S. 40:537(B) (emphasis added). Other than the Open Meetings Law violations, Durel did not state any other basis that had not been ruled on by Judge Rubin in reversing the first removal of the Commissioners.

4

The majority of this court now compounds this procedural misstep. Our appellate review jurisdiction does not vest us with the power to reverse the findings of district courts on "subject matters" originally and exclusively assigned to them by the legislature once the deadline for appeal has expired. The judgments below become final and enforceable. The majority's decision to review the merits of this case by ferreting through the record to independently determine whether the Open Meetings Law was violated by the Commissioners is nothing more than a collateral attack on the final judgment already rendered by Judge Planchard. Again, the law and jurisprudence forbid us from two-stepping past well established procedural rules that are so elementary they often are accepted without much discussion. Enough said, except I note that it is Durel and Lafayette City Council's failure to avail themselves of either the proper process available to seek removal of the Commissioners or appellate review when the matter was first heard by Judge Rubin, that places them in their present precarious position. Their second "self-help" attempt to remove the Commissioners places them in no better position. We are powerless to throw them a rope; they must extricate themselves from the sinkhole they have created.

Even if it can be urged that a "neglect of duty or misconduct" removal from office may be bootstrapped to an Open Meetings Law violation, whether a violation actually occurred *must* first be found by a district judge. Further, *the enumerated remedies for violating the Open Meetings Law do not include removal from office.* The maximum civil fine for a violation of this law by a member of a public body is $100 – **not removal from the board!** La.R.S. 42:28.

Next, I note that the effective date of a judgment is the date of the signing of the judgment. It is the date the judgment was signed by Judge Rubin that must be the "starting point" of any inquiry on the merits of Appellants' claims. *See*

*Malbrough v. Kiff*, 312 So.2d 915, (La.1 Cir. 1975); La. Code Civ. P. art. 1911. "It is from that date [signing of the judgment] prescription, execution, and all other rights arise." *Ibid*; *see* also *Succession of Meyers*, 133 So. 897 (La.App. Orleans, 1931). "A judgment is not complete, nor does it take effect, until actually signed." *Brand v. Livaudais*, 3 Mart., O.S. 389, (1814). "… [A] judgment is not final until it is signed." *Young v. Geter*, 187 So. 830 (La.App. 2 Cir.1939). This is well settled and unquestioned law in Louisiana. Plaintiffs had no authority to call a meeting on October 26, 2010, because they had been removed as Commissioners. There was no stay order in place and no suspensive appeal which allowed them to continue serving as Commissioners during the pendency of the appeal from an adjudicated ruling by an administrative body. Whatever this "gathering" of people was On October 26, 2010, it was not a legally constituted meeting of the HACL. Judge Rubin's judgment was not effective until signed, and *his order reinstating Plaintiffs to act as Commissioners was not signed until October 27, 2010*. Nothing that occurred on October 26, 2012 could form any basis for any action against the Plaintiffs. The public, Durel, and the Council were all free legally to ignore any action they took on that day.

Durel's action, later sanctioned by the Council, was clearly no more than an obvious attempt to circumvent the judgment he knew was forthcoming from the district court on the eve of the issuance of that very judgment. Moreover, *Durel once again removed only the three Plaintiffs for alleged violations of the Open Meetings Law, but at least two of his five allegations involved all members of the Board of Commissioners.* Durel's letter addressed to Plaintiffs dated November 19, 2010, set forth five alleged violations of the Open Meetings Law which Durel asserted constituted "neglect of duty and misconduct in office." In the letter Durel states:

6

1.  Although the intention to hold an Executive Session was disclosed on the agenda of the meeting of October 26, 2010, the agenda did not indicate the precise purpose for which the Executive Session was to be held.  La.R.S. 42:16.

2.  Prior to going into Executive Session, you did not call for a vote as explicitly required by the Open Meetings Law.  La.R.S. 42:16.

3.  The purpose for which you went into Executive Session was verbally stated to be to discuss "personnel issues."  While the Open Meetings Law permits an Executive Session to consider and discuss the "character, professional competence . . . of a person." An Executive Session for such purposes may only be held if (a) it is disclosed on the agenda and (b) the person(s) to be discussed are given twenty-four (24) hours' notice prior to the holding of the meeting.  Neither of these statutory requirements took place.  La.R.S. 42:17.

4.  After holding the Executive Session, you did not vote to go back into open session.  La.R.S. 42:16.

5.  Contrary to the requirements of the Open Meetings Law, a copy of the Open Meetings Law is not posted at the office of the Housing Authority.  La. R.S. 42:12B.

The majority states Durel's "November 19, 2010 removal letter was based upon alleged conduct which occurred after the immediate reinstatement of Plaintiffs as commissioners by the trial court on October 12, 2010." *October 12, 2010 is not an operative date in this matter except to show that Durel knew as of that date what the final judgment of the district court would be when he began to formulate his capricious preemptive strike* based on the Commissioners' announcement that they intended to discuss certain matters on October 26, 2010. Again I reiterate, Plaintiffs were removed as Commissioners long before the October 26, 2010 "gathering" date and had no authority to call or hold an official board meeting prior to the signing of the October 27, 2010 Judgment.  Thus, Plaintiffs could not be guilty of any wrongdoing at such a "gathering" as it was void *ab initio* and not a meeting subject to any laws, including the Open Meetings Law.

7

Albeit the Open Meetings Law is not applicable here, perhaps understanding its purpose will serve some benefit. The Open Meetings Law is set forth in La.R.S. 42:11, et. seq. Louisiana Revised Statutes Section 42:12 sets forth the public policy basis for our open meetings law:

> A. It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy.

Louisiana law further sets forth the effect which flows from of a violation of the Open Meetings Law and lists the remedies for such violations:

> Any action taken in violation of this Chapter shall be voidable *by a court of competent jurisdiction.* A suit to void any action must be commenced within sixty days of the action. (emphasis added)

La.R.S. 42:24.

The remedies for a violation of the open meetings law are detailed in La.R.S. 42:26:

> A. In any enforcement proceeding the plaintiff may seek and *the court may grant* any or all of the following forms of relief:
>
> (1) A writ of mandamus.
> (2) Injunctive relief.
> (3) Declaratory judgment.
> (4) Judgment rendering the action void as provided in R.S. 42:24.
> (5) Judgment awarding civil penalties as provided in R.S. 42:28
>
> B. In any enforcement proceeding *the court has jurisdiction and authority* to issue all necessary orders to require compliance with, or to prevent noncompliance with, or to declare the rights of parties under the provisions of this Chapter. Any noncompliance with the orders of the court may be punished as contempt of court. (emphasis added)

Our Open Meetings Law, at La.R.S. 42:28, also provides the penalty for any member of a public body found to have violated the open meetings law:

Any member of a public body who *knowingly and willfully* participates in a meeting conducted in violation of this Chapter, shall be subject to *a civil penalty not to exceed one hundred dollars per violation.* The member shall be personally liable for the payment of such penalty. A suit to collect such penalty must be instituted within sixty days of the violation. (emphasis added)

In *Daigre v. Terrebonne Assoc. For Retarded Citizens*, 543 So.2d 1108 (La.App. 1 Cir. 1989), *writ denied* 548 So.2d 333 (La.1989), our sister circuit addressed technical violations of the Open Meetings Law strikingly similar to those alleged against the present Plaintiffs. In *Daigre*, the Executive Director of the Terrebonne Association for Retarded Citizens (TARC) brought an action against the public body for alleged violations of Louisiana's Open Meetings Law after being terminated from their employment at an executive session. Daigre alleged TARC did not give notice of the meeting pursuant to then La.R.S. 42:7.[2] He alleged further that the meeting was "procedurally invalid under [then] LSA-R.S. 42:6 because the members' vote on the question of going into an executive session and the reason for holding it were not recorded and entered into the minutes." He also alleged the board of directors violated then La.R.S. 42:6.1 "because the executive session authorized under the "character discussion" exception of LSA-R.S. 42:6.1 was not held at an 'open meeting' under LSA-R.S. 42:5 and LSA-R.S. 42:7." Daigre asked the court to void TARC's termination of his employment and to declare him to be the executive director. TARC admitted it was subject to the provisions of the Open Meetings Law. The trial court dismissed Daigre's suit despite its finding that TARC had "technically" violated the Open Meetings Law. The First Circuit Court of Appeal affirmed the trial court holding:

We agree with the trial court that although there were technical violations of LSA-R.S. 42:4.1 through 4.8, they do not offer plaintiff any grounds for relief under the facts here. The Open Meetings Law was designed to allow the public to observe and evaluate public officials, public conduct, and public institutions. *Comment, Entering*

---

[2] La.R.S. 42:4.1 to 9 were re-designated as La. R.S. 42:11 to 42: 24 by Acts 2010, No. 861, Section 23.

*the Door Opened: An Evolution of Rights of Public Access to Governmental Deliberations in Louisiana and a Plea for Realistic Remedies,* 41 La.L.Rev. 192,194 (1980). It is meant to "protect citizens from secret decisions made without any opportunity for public input." *Delta Development Co. v. Plaquemines Parish Commission Council*, 451 So.2d 134, 138 (La.App. 4 Cir.), *writ denied*, 456 So.2d 172 (La. 1984). It is impossible to say here that plaintiff was denied any rights personally since he was present at the meeting with his lawyer and could have entered the executive session had he so desired. Plaintiff argues, however, that the lack of prejudice is irrelevant: that the statute must be liberally construed to protect the public's right to observe deliberations of public bodies. ***This argument is an attempt to bootstrap the noble ideals of the Open Meetings Law and the guarantee afforded Louisiana citizens under article 12, section 3, of the 1974 Louisiana Constitution to plaintiff's own natural desire to minimize his loss after he was terminated from employment by defendant.*** We agree with the reasons for judgment assigned by the trial court, which reasons are attached as an appendix to this opinion. (emphasis added)

*Daigre*, at 1109-10.

The trial court, as reflected in the appendix attached to and made part of the first circuit's ruling, reasoned :

> [T]he court finds that although there were some technical, very technical violations of 42:7 and 42:6, these violations were insignificant in view of the fact that the letter of the law is to protect individuals from matters that are not within their knowledge and to give them adequate notice and time to do something about it.
>
> The Court finds that this individual, the plaintiff, had adequate time and knowledge, had his lawyer there, and so any of these technical violations is certainly not grounds for the Court to void any action that they took at that time.

*Daigre*, at 1110-11.

In the matter at hand, Durel alleged Plaintiffs violated the Open Meetings Law by not calling for a vote to go into an executive session; not voting to go back into open session; and not following the proper procedure for discussing personnel issues in an executive session, allegations also made in *Daigre*. Durel also asserted two additional violations stating that the "intention to hold an Executive Session was disclosed on the agenda of the meeting of October 26, 2010" but the Commissioners failed to indicate on the agenda "the precise purpose for which the

Executive Session was to be held. La.R.S. 42:16." Finally, he alleged as a violation of the Open Meetings Law that "a copy of the Open Meetings Law [was] not posted at the offices of the Housing Authority. La.R.S. 42:12B."

There is not a smidgen of evidence in the record lodged with this court showing the actions of Plaintiffs on October 26, 2010 prejudiced the rights of any citizen in any manner. Further, the record is void of proof that the Commissioners *knowingly and intentionally* failed to follow the Open Meetings Law, a prerequisite to finding them civilly liable. Nevertheless, Durel decided to remove the Commissioners and to report their actions to the District Attorney asking him to bring suit against them pursuant to La.R.S. 42:25(B). As mentioned, that case was dismissed by Judge Planchard who found no violation of the Open Meetings Law. The District Attorney exercising his discretion and wisdom did not appeal that decision. Not satisfied with, and unwilling to accept the district court's proper exercise of its statutory authority, Durel continued to encourage the City Council to affirm his decision to remove the Commissioners.

When Judge Rubin asked Durel if he was aware of the ruling rendered by Judge Planchard, Durel responded "I knew that some--- a retired judge had kind of made some kind of ruling about that" but acknowledged that such ruling did not cause him to reconsider his notice of removal. As the Louisiana State Supreme Court instructed in *City of Lake Charles v. Bell*, 347 So.2d 494, 496-97 (La. 1977) ". . . [t]he deliberate refusal to obey an order of court without testing its validity through established process requires further action by the judiciary . . . ." We have been reminded repeatedly that "[a] court's power to decide includes [the] power to decide wrongly." *Id.* Our founders were keenly aware that *"[r]espect for the judicial process is a small price for the civilizing hand of law." Id.* (emphasis added). The trial judge in reviewing all of Durel's conduct had good reasons to

11

find that Durel was engaging in acts of nullification in contemptuous defiance of his October 27, 2010 judgment.

The majority's final "Hail Mary pass" to HUD using the federal preemption ball will not save Durel from his willful behavior or the Council's decision it was not vested with authority to make. The trial court did nothing to circumvent HUD's action or authority. Indeed Judge Rubin recognized he was powerless to do so. The record contains an exhibit, a letter from HUD to Judge Rubin, explaining that "*HUD is not a party in the above-captioned litigation*, (referencing the consolidated cases) and we do not inappropriately seek to influence the October 31, 2011 hearing set in this case, but to clarify to the Court HUD's actions and authority concerning the Housing Authority." The trial court ruled the Lafayette City-Parish Council's decision of March 2, 2011 was "improper and is reversed." The trial court stated "Well, listen, I'm being asked to make a decision on whether or not the decision was proper. I'm finding that it was not. So we'll cross that bridge when we get to it." This statement was made in regard to Defendants' assertion that the takeover by HUD made them an indispensable party and precluded action by the trial court, despite HUD's stated position. It did not. The effect and execution of Judge Rubin's ruling is a matter that must await another day. For the reasons stated I respectfully dissent.