876 So.2d 581 (2004)
I.B. and D.B., Foster Parents of T.T., A Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D03-2480.
District Court of Appeal of Florida, Fifth District.
June 4, 2004.
*582 Richard J. D'Amico, Daytona Beach, and Rick Brown, Daytona Beach, for Appellants.
George P. Beckwith, Jr., Acting District Legal Counsel, Department of Children and Families, Daytona Beach, for Appellee.
SHARP, W., J.
I.B. and D.B., the foster parents of T.T., appeal from an order of the trial court which dismissed their petition to adopt the child, removed the child from their home and placed him with J.D. and T.D., the child's relatives in Tennessee and the parties approved by the Department to adopt the child. The trial court concluded it lacked the authority, under the doctrine of separation of powers, to interfere with the Department's selection of the adoptive parents and that the foster parents lacked standing to challenge the Department's selection. We conclude that under the facts of this case, the trial court had the authority and should have conducted a hearing to consider whether the change in placement from the foster parents to the relatives was in the child's best interests.
The record discloses that a few days after his birth in October 2001, the child was taken into the Department's custody and a guardian ad litem appointed for him. Both the child and his mother tested positive for cocaine. The mother has had other children removed from her custody. The person listed as the child's father is not his biological father but allowed his name to be placed on the birth certificate. Apparently he has no interest in the child.
In December, the Department filed a petition seeking to declare the child dependant. In February 2002, the Department placed the child with the foster parents. According to the foster parents, they had been seeking a child for adoption and the Department granted them a foster care license specifically for this child. The guardian ad litem reported the child was being well cared for and loved by his foster parents, who were planning to adopt him.
Also in February, the Department contacted the mother's cousin, T.D., who lives in Tennessee. She was also interested in adopting the child. The Department requested that Tennessee conduct a home study on T.D. and her husband J.D. More than six months elapsed before the home study was completed.
In March, Judge Julianne Piggotte adjudicated the child dependant and ordered the Department to proceed with the goal of adoption. In April, the Department moved to terminate parental rights. Sometime in April, the Department notified the foster parents that the relatives were interested in adopting the child.
At the end of April, the guardian submitted a report in which she stated the child seemed healthy, happy and secure, was receiving a lot of attention and love and was being well cared for by the foster parents. Her report also states:
The foster parents are anxious to adopt the child and I believe that they would make excellent parents. They are loving and caring and have the best interests of the child in mind. I also have had an opportunity to interview the cousin [T.D.] from Tennessee. She was visiting in the Daytona area with her husband and her mother. This couple are also most interested in adopting the child and also seem to be loving and *583 caring people. In this placement the child would also have an extensive extended family.
In early June, the Department submitted its predispositional study. The report notes the child has been well cared for by the foster parents who are anxious to adopt him. The report also notes the relatives are willing to adopt the child.
On June 10th, Judge Robert Rawlins, Jr. entered an order terminating parental rights to the child. The order notes the child is attached to his foster parents and there is currently no suitable, permanent arrangement with a relative. (At this time, the relatives' home study had not yet been received.) At about this same time, the guardian ad litem moved out-of-state.
In October, the Department moved to change placement from the foster parents to the relatives. The Department noted the relatives want to adopt the child and a positive home study had now been completed by Tennessee.
A few days later, the foster parents filed their own petition to adopt the child. The foster parents did not have the consent of the Department for their adoption.
After a hearing, Judge Piggotte denied the Department's motion for a change of placement, noting the child has only had one contact with the relatives. The judge ordered the Department to provide visitation for the relatives and the child.
At the end of October, the Guardian Ad Litem Program was discharged from the case. The motion for discharge notes the child has been placed with foster parents who have filed a petition for adoption, is receiving all needed services, and the guardian supports Judge Piggotte's ruling which ordered the child remain in his current placement.
Although the guardian had moved out-of-state and the Guardian Ad Litem Program had been discharged from the case, the guardian continued to have contact with the parties and the Department. In February 2003, the guardian wrote a letter to the Department stating that in her opinion, it was in the child's best interests for him to remain permanently with the foster parents. In a deposition taken a short time later, the guardian again recommended the child remain with the foster parents.
In its March 2003 case plan update, the Department noted that the adoption applications from both the foster parents and the relatives had been submitted to its adoption review committee and a decision was pending. The Department's adoption review committee ultimately selected the relatives as the adoptive parents.
Both the foster parents and the Department filed a number of motions relating to the adoption. Among other things, the foster parents moved to reappoint a guardian ad litem, intervene in the dependency action, consolidate the dependency action with their adoption case and place the case on the trial docket. The Department moved to strike the motions filed by the foster parents, to change placement from the foster parents to the relatives, and to dismiss the foster parents' petition for adoption.
In May 2003, Judge Shawn Briese reappointed the Guardian Ad Litem Program. Unfortunately, the Program responded they had no available guardians and so were discharged from the appointment.
On June 5th, Judge Briese held a non-evidentiary hearing on the motions filed by the foster parents and the Department. Counsel for the foster parents pointed out the child had been in their care for the past sixteen months and had developed a very strong bond with them. Counsel also noted the guardian recommended the child *584 remain with the foster parents since they had cared for him for over a year and the child had bonded with them.
The Department acknowledged there had been a delay in this case caused in part by the home study in Tennessee and in part by the Department's own paper work errors. Nevertheless, the Department argued there was nothing to show the child would suffer psychological damage from the change in placement or that the relatives were not an appropriate placement. The Department also claimed the foster parents did not have an agreement to adopt this particular child.
Although both parties raised matters which clearly impacted the child's welfare, Judge Briese did not take any evidence at this hearing, did not hear from the foster parents or the guardian and did not consider the child's best interests in removing him from his home of sixteen months. Instead he simply ruled as a matter of law that the decision to select the suitable adoptive parents was one for the Department, and not the judiciary, and that the foster parents lacked standing to challenge the Department's decision.
The judge then dismissed the foster parents' adoption petition and denied their related motions, granted the Department's motions and placed the child with the relatives in Tennessee with that state to supervise the pre-adoptive placement. The foster parents moved to stay the proceedings pending their pursuit of administrative remedies but that request was denied.
As a threshold matter, we conclude the foster parents clearly have standing to intervene in these proceedings.[1] The nature of the interest that entitles a party to intervene "must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." Sullivan v. Sapp, 866 So.2d 28, 33 (Fla.2004).
Here "the matter in litigation" was the placement for adoption of the foster parents' child, the child they wanted to adopt and had cared for the past sixteen months. The foster parents would directly gain or lose by the court's rulings. Thus the foster parents have sufficient interest to warrant intervention in the litigation. See In the Interest of Z.J.S., 787 So.2d 875 (Fla. 2d DCA 2001); In the Interest of C.G., 612 So.2d 602 (Fla. 4th DCA 1992).
Even if the foster parents were not properly intervenors in these proceedings, they were already "participants" under Florida Rule of Juvenile Procedure 8.210(b) since they were the child's foster parents.[2] Under this rule, participants *585 may be granted leave by the court to be heard without the necessity of filing a motion to intervene. See N.S. v. Department of Children and Families, 857 So.2d 1000 (Fla. 5th DCA 2003).
Turning to the substantive issues, the foster parents contend the trial court erred in failing to determine that section 39.812 is unconstitutional, both facially and as applied in this case. We are unable to find the foster parents presented this issue to the trial court. Thus they may only challenge the facial constitutionality of the statute. Westerheide v. State, 831 So.2d 93 (Fla.2002).
Section 39.812 provides in part:
39.812. Postdisposition relief; petition for adoption
(1) If the department is given custody of a child for subsequent adoption in accordance with this chapter, the department may place the child with an agency as defined in s. 63.032, with a child-caring agency registered under s. 409.176, or in a family home for prospective subsequent adoption. The department may thereafter become a party to any proceeding for the legal adoption of the child and appear in any court where the adoption proceeding is pending and consent to the adoption, and that consent alone shall in all cases be sufficient.
* * *
(4) The court shall retain jurisdiction over any child placed in the custody of the department until the child is adopted. After custody of a child for subsequent adoption has been given to the department, the court has jurisdiction for the purpose of reviewing the status of the child and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown by the guardian ad litem for the child, the court may review the appropriateness of the adoptive placement of the child.

(5) The petition for adoption must be filed in the division of the circuit court which entered the judgment terminating parental rights, unless a motion for change of venue is granted pursuant to s. 47.122. A copy of the consent executed by the department as required under s. 63.062(7) must be attached to the petition. The petition must be accompanied by a form provided by the department which details the social and medical history of the child and each parent and includes the social security number and date of birth for each parent, if such information is available or readily obtainable. The person seeking to adopt the child may not file a petition for adoption until the judgment terminating parental rights becomes final. An adoption proceeding under this subsection is governed by chapter 63, as limited under s. 63.037. (emphasis added)
Chapter 63 specifically provides:
63.022. Legislative intent
(2) It is the intent of the Legislature that in every adoption, the best interest of the child should govern and be of foremost concern in the court's determination. The court shall make a specific finding as to the best interest of the child in accordance with the provisions of this chapter.
The foster parents argue section 39.812 violates the due process and equal protection guarantees of the Florida and federal constitutions by providing children *586 adopted through the Department with less rights than children adopted through other means. According to the foster parents, section 39.812 gives the Department "unfettered" discretion to determine adoptive placements whereas adoptions under chapter 63 must be in the "best interests" of the child.
We find section 39.812 is facially constitutional. Section 39.812(5) specifically provides that an adoption proceeding under this subsection is governed by chapter 63. In turn, section 63.022(2) specifically provides that in every adoption, the best interests of the child should govern and be of foremost concern in the court's determination. Since the trial court must determine that the adoption of every child, including those in the Department's custody, is in the child's best interests, children in the Department's custody are not denied their constitutional rights to due process and equal treatment.
However, we do conclude the trial court erred in this case by refusing to consider the child's best interests before changing placement from the foster parents to the relatives. The trial court clearly has the authority, as well as the duty, under sections 39.812(4) and(5) and section 63.022(2) to consider the child's best interests in these circumstances. We also note that trial courts have inherent power when determining issues relating to children to consider the child's best interests. See Department of Children & Family Services v. Interest of J.C., 847 So.2d 487 (Fla. 3d DCA 2002); Bilbo v. Bilbo, 688 So.2d 1031 (Fla. 5th DCA 1997); Waters v. Waters, 578 So.2d 874 (Fla. 2d DCA 1991).
The trial court's resolution of this case on separation of powers grounds may have been appropriate if, for example, the child was being cared for by a third party and neither the foster parents nor the relatives had formed any bond with the child. There is no doubt the Department is the entity charged with the responsibility and given the resources to do the background checks and home studies necessary to evaluate the suitability of prospective adoptive parents. See In re Interest of K.A.B., 483 So.2d 898 (Fla. 5th DCA 1986) (Department is better equipped to make the day-to-day health and welfare decisions which concern the child).
Nevertheless, the authority and the discretion of the Department with respect to adoptive placements are not absolute. The trial court has inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child's welfare. B.B. v. Department of Children & Families, 854 So.2d 822 (Fla. 1st DCA 2003).
In a similar case, Department of Children and Family Services v. Interest of J.C., 847 So.2d 487 (Fla. 3d DCA 2002), the appeals court held the trial judge had the authority to prohibit the Department from taking the child from the child's foster mother pending an appropriateness hearing. In that case, the Department placed the child with Scott, a friend of the father. Like the foster parents here, Scott had provided a warm and loving home for the child, the two developed a close bond and Scott wanted to adopt the child. Scott and the child moved to Virginia with the approval of the Department. However, Virginia declined to accept adoptive placement of the child with Scott because the financial stability of Scott, who was not receiving assistance from Florida, was questionable.
Since Virginia did not accept the placement, the Department decided to remove the child from Scott. While Scott was in Florida on vacation, the Department requested that she come in their office with the child. The child was then taken away *587 from her. At a hearing a few days later, the Department contended it had exclusive jurisdiction to take the child away from Scott in order to select the adoptive parents.
The guardian ad litem moved the court to conduct a good cause hearing to review the appropriateness of the placement under section 39.812(4). The judge granted the motion, ordered a childhood intervention specialist to see the child immediately and ordered the Department to return the child to Scott pending the subsequent appropriateness hearing.
The Department then petitioned the appeals court for a writ of prohibition, seeking to quash the trial judge's order. The Department argued the trial court exceeded its jurisdiction by preventing the Department from changing the child's placement and in maintaining the status quo pending review of the appropriateness of the adoptive placement.
In rejecting this argument, the court pointed out that under chapter 39, the judicial and executive branches exercise concurrent jurisdiction over the welfare of foster children who have been placed in the Department's custody. This grant of concurrent power furthers the state's compelling interest in protecting children, based on the recognition that there are instances in which the best interests of the child and the Department may differ. Judicial review is an important part of the "checks and balances" process and serves to ensure accountability from the Department.
As part of its legislatively-mandated review authority, the judiciary is specifically authorized to exercise its review powers in analyzing the appropriateness of the Department's proposed adoptive placement. In exercising this review power, the courts possess inherent authority to maintain the status quo and prevent irreparable harm:
Especially in the context of children, our trial courts have a continuing responsibility to vigilantly protect the welfare and best interests of the child....
Here, the trial judge was faced with a situation where a child had been placed with a loving and competent caregiver since birth, and thereafter under suspect circumstances was abruptly removed from that caregiver, the only mother he had ever known, to be placed with strangers. It is presumptively in the best interests of a child to remain in the home where he or she has spent the majority of his or her life. See Rumph v. V.D., 667 So.2d 998 (Fla. 3d DCA 1996); S.J. ex rel. M.W. v. W.L., 755 So.2d 753 (Fla. 4th DCA 2000). Clearly there was no error in the trial court's finding that it was in the best interests of J.C. to remain with [Scott] pending a determination of the appropriateness of J.C.'s adoptive placement.
847 So.2d at 491.
In this case, the foster parents claim they were granted a license specifically for this child. Thus encouraged by the Department, the foster parents may have developed a stronger than normal bond with the child. The Department disputes this and claims the foster parents only had an agreement to provide substitute care and the care was not specifically for this child.[3]
However, the guardian ad litem supported the foster parents' claim the child had been placed with them for adoption. The guardian specifically stated that Department workers told her the child's *588 placement was a pre-adoptive placement. The guardian was opposed to any change in placement given the child's bond with the foster parents.
The foster parents also point out that children in the Department's custody are supposed to be placed in a permanent home as quickly as possible. In fact, the Legislature has specifically provided that one of the purposes of chapter 39 is:
To ensure that permanent placement with the biological or adoptive family is achieved as soon as possible for every child in foster care and that no child remains in foster care longer than 1 year. (emphasis added)
§ 39.001(1)(h), Fla. Stat. Here the child remained with the foster parents for longer than one year through no fault or delay on their part.
The issues raised by the parties at the June 5th hearing suggest this was not a case which should have been decided on a separation of power basis and the foster parents should have been heard on a matter which directly affects them. The foster parents may or may not have had an agreement with the Department to provide foster care for this child with the intention of adopting him. Even if there were no such agreement, the child lived with the foster parents for sixteen months, which violates the statutory directive that foster care be limited to one year. In addition, the child had bonded with them and they were the only parents he had ever known. Given the length of time the child lived with the foster parents and the bond that had formed between them, the judge should have considered whether moving the child from this home to an out-of-state placement was in the child's best interest.
In reaching our decision, we are aware of cases from the fourth district which hold that a trial court cannot interfere with the Department's decision in selecting an adoptive family where the Department's selection was "appropriate, consonant with its policies and made in an expeditious manner." See Florida Department of Children & Families v. Adoption of B.G.J., 819 So.2d 984 (Fla. 4th DCA 2002); C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA), rev. denied, 680 So.2d 424 (Fla.1996).
However, we agree with the first district that an "appropriate" selection depends on the facts of a particular case and must always be consistent with Florida law. See B.B. v. Department of Children & Families, 854 So.2d 822 (Fla. 1st DCA 2003) (it falls to the trial court to ensure that the Department's selection is appropriate and consonant with its policy). The fact that the child had lived with the foster parents for sixteen months by itself casts doubt on whether the Department's decision was made in an "expeditious" manner.
Accordingly, we remand to the trial court to hold a hearing to determine whether the change in placement was in the child's best interests. The child shall remain in its current placement pending any decision by the trial court.[4]
REVERSED and REMANDED.
MONACO and TORPY, JJ., concur.
NOTES
[1] Florida Rule of Civil Procedure 1.230 provides as follows:

Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.
[2] Rule 8.210. Parties and Participants

(a) Parties. For the purpose of these rules the terms "party" and "parties" shall include the petitioner, the child, the parent(s) of the child, the department, and the guardian ad litem or the representative of the guardian ad litem program, when the program has been appointed.
(b) Participants. "Participant" means any person who is not a party but who should receive notice of hearings involving the child. Participants include foster parents or the legal custodian of the child, identified prospective parents, actual custodians of the child, grandparents entitled to priority for adoption consideration as provided by law, the state attorney, and any other person whose participation may be in the best interest of the child. The court may add additional participants. Participants may be granted leave by the court to be heard without the necessity of filing a motion to intervene and shall have no other rights of a party except as provided by law. (emphasis added)
[3] An agreement not to seek adoption of a foster child standing alone does not preclude the foster parents from adopting the child. C.S. v. S.H., 671 So.2d 260, 270 n. 12 (Fla. 4th DCA), rev. denied, 680 So.2d 424 (Fla.1996).
[4] At this point, we decline to address the foster parents' argument the trial court erred in refusing to appoint a guardian ad litem at the June hearing. We note the judge reappointed the Guardian Ad Litem Program, but the Program had no volunteers available. We also note the ultimate responsibility for determining the best interests of the child rests with the trial judge and whether the failure to have a guardian is reversible error will depend on the circumstances of each case. See In re E.F., 639 So.2d 639, 644 (Fla. 2d DCA 1994) ("We cannot reverse a trial judge who uses his or her own judgment to determine the best interests of a child when the judge has requested and not received a voluntary guardian ad litem.")