# Third District Court of Appeal
## State of Florida

Opinion filed January 26, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1716
Lower Tribunal No. 17-15351
_____

**T.R.-B.,**
Appellant,

vs.

**Department of Children and Families, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Vivianne del Rio, Judge.

Jay & Campbell, PLLC, and Katie Jay (Stuart), for appellant.

Karla Perkins, for appellee Department of Children and Families; Sara Elizabeth Goldfarb and Laura J. Lee (Tallahassee), for appellee Guardian ad Litem.

Before FERNANDEZ, C.J., and HENDON, and BOKOR, JJ.

FERNANDEZ, C.J.

Appellant/petitioner below T.R-B. ("the petitioner") appeals the trial court's final order denying her amended motion to intervene as an interested party in her minor grandson's underlying dependency proceeding. Because the trial court erred in denying the petitioner's motion, we reverse the order on appeal and remand to the juvenile court for further proceedings consistent with this opinion.

The petitioner is the maternal grandmother and custodian of D.W., the minor child in the underlying dependency case. On May 26, 2017, Florida's Department of Children and Families ("DCF") sheltered D.W. Immediately, the petitioner sought custody of D.W. DCF initially objected to the trial court placing D.W. with the petitioner due to the thirty-year-old criminal conviction of petitioner's husband, D.W.'s step-grandfather. Almost thirty years ago, the step-grandfather was convicted of grand theft and cocaine distribution/possession and served ten years in jail.

On October 22, 2018, D.W.'s mother's parental rights were terminated, and D.W has no legal father. Thereafter, the petitioner obtained a home study. The home study was positive and indicated that the step-grandfather had lived the past twenty years as an "upstanding citizen." The home study showed that the step-grandfather had a stable and respectable job for the last twenty years and was able to financially care for his children with his

wife, the petitioner; he was a role model to his children and society; and D.W. was very safe with him and was very well cared for and loved by the step-grandfather. Thus, the home study found that the step-grandfather's criminal history should not be a deterrent for the adoption to proceed. The home study further indicated that D.W. is bonded to the petitioner, his step-grandfather, and petitioner's family, namely: the petitioner's mother (D.W.'s great grandmother), the petitioner and her husband's biological daughter who lives with them and is approximately D.W.'s age (D.W.'s aunt), and the petitioner and her husband's biological son who lives with them and is fifteen-year-old (D.W.'s uncle).

In August 2017, the trial court overruled DCF's objection and awarded custody of D.W. to the petitioner and the petitioner's mother, C.G., who lives with the petitioner and her family. The trial court found it was in D.W.'s best interest to be placed in the custody of his grandmother (the petitioner). DCF or GALP have never sought to remove D.W. from the petitioner's home.

The petitioner then applied to adopt D.W. On August 27, 2020, DCF's Adoption Applicant Review Committee ("AARC") denied the petitioner's application, mainly due to the petitioner's husband's criminal record. The AARC also cited an alleged lack of a bond between the petitioner and D.W. as another reason for denying the petitioner's application. Instead, the AARC

approved the application submitted by D.M., a non-relative caregiver of D.W.'s infant biological sibling, A.W. D.W. has never resided with D.M.[1]

The petitioner claims that although DCF was aware that the petitioner wanted to adopt D.W., DCF failed to provide her with notice of hearings and meetings and/or ask for her input, as is required by section 39.4087, Florida Statute (2021). Accordingly, on September 21, 2020, the petitioner filed a formal complaint with the Family Resource Center listing the statutory violations.

On December 28, 2020, the petitioner filed her petition in the family court division to adopt D.W. In her adoption petition, the petitioner requested that, pursuant to section 63.062(7), Florida Statute (2021), the trial court find that DCF was unreasonably withholding its consent to her adoption of D.W.

On January 11, 2021, DCF asked the court for unsupervised weekly visitation between D.W. and A.W. to be supervised by D.M., the approved adoptive applicant, which the trial court granted on January 12, 2021.[2] The petitioner alleges neither she nor her counsel were notified. On January 20, 2021, the petitioner filed her Amended Petition for Adoption by Relative. On

---

[1] The petitioner filed an administrative appeal of the AARC's decision, which has been stayed since the time the petitioner filed the adoption petition.
[2] DCF later agreed to stay the visitation order until the petitioner's motion to intervene could be heard by the court.

4

January 29, 2021, the petitioner filed her "Motion to Intervene as an Interested Party and to Stay 01/12/2021 Visitation Order."

On February 17, 2021, after the petitioner moved to have the family adoption case transferred to the juvenile division, the trial court in the family division transferred the adoption case to the Unified Children's Court Division and ordered that a "juvenile adoption case" be created and assigned through the Office of the Clerk of the Courts, Juvenile Division.

In March 2021, the petitioner moved to waive DCF's consent to adoption. In preparation for the hearing before the trial court on this motion, in April 2021, the petitioner gave notice in the adoption proceeding to the GALP for the virtual depositions of the certified guardian ad litem and the GALP assistant circuit director. On April 29, 2021, the GALP filed an emergency motion to quash notice of taking deposition and motion for protective order and requested an emergency hearing. The GALP filed this motion in the dependency case, in which the GALP was a party but in which the petitioner was not. The GALP argued that the petitioner intended to depose the GALP's employees in the adoption matter to which the GALP was not a party but to which the trial court retained exclusive jurisdiction. In addition, it argued only parties may take depositions, and the petitioner was not a party to the dependency action, only a participant.

On May 3, 2021, the petitioner filed her "Emergency Motion to Stay Hearing." The trial court denied the stay. The next day, the trial court held the hearing on the GALP's motion to quash the petitioner's notice of deposition. The trial court acknowledged that on June 8, 2021, it would address the issue of whether DCF unreasonably withheld consent for the petitioner to adopt D.W., decided to give both parties more time to research the deposition issue, and thus rescheduled the hearing to May 18, 2021. Over the petitioner's objection, the trial court directed her to file her response in the dependency action to the GALP motion to quash.

Thereafter, at the May 18, 2021 hearing, the trial court found that adoption proceedings initiated under Chapter 39 are exempt from the jurisdiction of section 63.087, as that section dealt with the termination of parental rights pending adoption, which was not the case here. The court found that section 39.812(5) applied. The court stated it was aware a hearing was set for June 8, 2021 on the petitioner's motion as to whether DCF unreasonably withheld its consent to the petitioner adopting D.W. The petitioner's attorney corrected the trial court because the June 8 hearing was, instead, set as a hearing on the petitioner's motion to intervene in the dependency proceeding.

6

The GALP reiterated that it requested the protective order because the petitioner was not a party to the dependency proceeding. The trial court asked DCF why it would grant the protective order if the petitioner's motion on DCF unreasonably withholding its consent was going to be heard on June 8, and the information the petitioner needed to prove her case would be obtained by taking the GALP's deposition. The trial court noted that the deposition would assist the petitioner in her presentation of evidence to show that DCF unreasonably withheld its consent. DCF replied to the court that the petitioner was not a party to the dependency case and thus could not depose a party because she was merely a participant. In response, the petitioner's attorney contended that although the petition for adoption was filed in the family court, it was transferred to the dependency court in February 2021. Thus, the petition was correctly in the juvenile division and correctly before this trial court.

At the end of the hearing, the court found that the petitioner at that point in time was not a party. The court found that the petitioner could become a party on June 8 if the court found at that hearing that DCF unreasonably withheld its consent to adoption. Thus, the court granted the GALP's motion for protective order because the petitioner was not a party who could conduct discovery. The court stated it was relying on section

7

39.812(5) because DCF's consent was required once a TPR was entered. In addition, the trial court ruled that D.W. and his sibling, A.W., would have weekly visitation. That same day, the petitioner voluntarily dismissed her adoption petition because the trial court had ruled that the juvenile rules applied to adoption proceedings arising from dependency proceedings. Thus, the petitioner had no way to amend her petition because the juvenile rules did not provide for amendments.

Thereafter, the petitioner filed her "Verified Petition for Adoption of Minor Child" on June 1, 2021, adding DCF and the GALP as parties. In the petition, the petitioner asked the court to find that DCF had abused its discretion by withholding its consent to the adoption of D.W. On June 3, 2021, the petitioner filed her amended motion to intervene as an interested party and to stay the January 12, 2021 visitation order.

On June 4, 2021, the GALP filed its "Motion to Review the Appropriateness of the Department's Adoptive Selection and Memorandum of Law in Support of the Maternal Grandmother's Motion to Waive the Department's Consent." The GALP now supported the petitioner's adoption and stated it was in D.W.'s best interest that the petitioner adopt D.W. The GALP also stated it was in the best interest of the child that the court waive DCF's consent, as it was being unreasonably withheld. It argued this was

8

because the AARC denial was largely based on the petitioner's husband's criminal history. The GALP contended that although his criminal history might have been a statutory disqualifier under section 39.0138(3), according to section 39.0138(8)(b), placement could be appropriate if the person showed they had been rehabilitated. The GALP contended that the step-grandfather's offense was almost thirty years old, and since then, he served his time, met conditions of probation, started a family, maintained employment, and served as a positive role model in the lives of his children and was an upstanding member of society. In addition, the GALP asserted that D.W. had been in the petitioner and her husband's home for the past three years, and nobody from DCF had expressed to the court or any person that the step-grandfather posed any danger to D.W., based on the step-grandfather's criminal history. The GALP argued that DCF had not moved to modify the child's placement and instead waited while D.W. remained with the petitioner, and the bond with cousins and caregivers was strengthened. The GALP argued that DCF's withhold of consent penalized the family and D.W., whose best interest would not be served if he was not adopted by his grandmother, the only family he had known.

On June 8, 2021, the trial court heard the petitioner's amended motion to intervene. The petitioner argued that she had the ability to seek

9

intervention for status in the dependency case. The petitioner argued that pursuant to I.B. v Department of Children and Families, 876 So. 2d 581, 584 (Fla. 5th DCA 2004), and Sullivan v. Sapp, 866 So. 2d 28, 33 (Fla. 2004), the legal test to seek party status is whether the interested person has an interest in the underlying subject matter of the case and whether that interested person is going to lose or gain, here, because of the ruling in the underlying dependency case. The petitioner stated that she met the I.B. test because I.B. made it clear that when there is a corresponding adoption petition that has been filed, the dependency court can allow an interested person to intervene. In addition, the petitioner argued that she had a fundamental liberty interest in maintaining her family, thus she should be permitted to intervene.

The court denied the motion, finding that the petitioner was a participant but did not grant the petitioner party status in the dependency case. The court later entered its order on July 21, 2021 denying the petitioner's amended motion to intervene. In addition, the court did not hold a hearing on the petitioner's motion on whether DCF's consent was unreasonably withheld because the petitioner withdrew the motion. The petitioner has now appealed the denial of her motion to intervene.

The petitioner contends, in part, that the trial court erred in concluding she may not intervene in D.W.'s dependency proceeding.[3] We agree with the petitioner.

An appellate court reviews an order on a motion to intervene under an abuse of discretion standard. Merrick Park, LLC v. Garcia, 299 So. 3d 1096, 1103 (Fla. 3d DCA 2019). In Florida, adoptions after a termination of parental rights proceed under Chapter 63, Florida's adoption statute, and section 39.812, Florida Statutes (2021), relating to adoptions after parental rights have been terminated. Section 63.037, Florida Statutes (2021), exempts these adoptions after the parental rights of each parent have been terminated from certain provisions in chapter 63, but not all. In addition, section 39.812 gives the dependency court continuing jurisdiction over the minor child until the child is adopted. § 39.812(4), Fla. Stat. (2021). "The petition for adoption must be filed in the division of the circuit court which

---

[3] The petitioner's remaining points on appeal are meritless. First, with respect to the petitioner's point referencing the May 18, 2021 trial court order that granted the GALP's motion for protective order, DCF and GALP are correct that this order is not within the scope of this Court's review, as this Court's review is limited to the order on appeal, which is the trial court's final order denying petitioner's amended motion to intervene. Second, the petitioner contends that the trial court erred in consolidating the adoption case with the dependency case. However, there is no order in the record consolidating the adoption proceeding with the dependency proceeding. The adoption proceeding was correctly transferred to the dependency court, as the petitioner requested, thus there is no merit to this point on appeal.

11

entered the judgment terminating parental rights, . . . ." § 39.812(5), Fla. Stat. (2021). A copy of the supporting home study and a "copy of the consent executed by the department must be attached to the petition, unless waived pursuant to section 63.062(7)." See also § 39.812(5). The court shall waive DCF's consent "upon a determination by the court that such consent is being unreasonably withheld and if the petitioner has filed with the court a favorable preliminary adoptive home study." § 63.062(7), Fla. Stat. (2021).

Rule 8.535(d) of the Florida Rules of Juvenile Procedure, although not giving much guidance to the court on how to conduct a withhold of consent hearing, provides the following:

(d) Withholding Consent to Adopt.

(1) When a petition for adoption and a favorable home study under section 39.812(5), Florida Statutes, have been filed and the department's consent has not been filed, the court shall conduct a hearing to determine if the department has unreasonably withheld consent.

(2) In reviewing whether the department unreasonably withheld its consent to adopt, the court shall determine whether the department abused its discretion by withholding consent to the adoption by the petitioner. In making this determination, the court shall consider all relevant information, including information obtained or otherwise used by the department in selecting the adoptive family, pursuant to Florida Administrative Code Chapter 65C.

(3) If the court determines that the department unreasonably withheld consent to adopt, and the petitioner has filed with the court a favorable home study as required by law, the court shall

12

incorporate its findings into a written order with specific findings of fact as to how the department abused its discretion in withholding its consent to adopt, and the consent of the department shall be waived.

Under Rule 8.535(d), the petitioner in the case before this Court was required to file a petition for adoption and a favorable home study to obtain a hearing on DCF's withhold of her consent to adopt D.W. She complied with these requirements. Although she filed the petition for adoption in the circuit court family division, on February 17, 2021, the petitioner's adoption case was transferred to the juvenile division where the dependency action was being heard and was assigned to the same judge hearing the dependency action. Thus, all statutory requirements were met for the petitioner to have the consent issue addressed by the trial court.

The petitioner contends that to prepare for the hearing before the trial court on the petitioner's motion to determine if DCF unreasonably withheld its consent to her adopting D.W., the petitioner wanted to depose two GALP employees. The GALP moved for a protective order contending that the petitioner was not a party to the dependency proceeding. The trial court agreed and granted the GALP's motion. The petitioner then filed her motion to intervene in the dependency proceeding to be able to depose the GALP employees, but the trial court denied this motion.

13

DCF and GALP argue that the trial court had no legal authority to grant the petitioner's motion to intervene, thus it did not err in denying the motion. However, as the petitioner contends, Florida law indicates otherwise.

First, the Florida Rules of Juvenile Procedure provide that a party "shall include the petitioner, the child, the parent(s) of the child, the department, and the guardian ad litem . . . when the program has been appointed." Fla. R. Juv. P. 8.210(a); see also § 39.01(58), Fla. Stat. (2021). Participants are defined as "any person who is not a party but who should receive notice of hearings involving the child." Fla. R. Juv. P. 8.210(b); see also § 39.01(57), Fla. Stat. (2021) (participants in a shelter proceeding, dependency proceeding, or termination of parental rights proceeding include foster parents, the child's legal custodian, identified prospective parents, actual custodians of the child, "and any other person whose participation may be in the best interest of the child.").

Further, Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, . . . ." In general, the intervention rule should be liberally construed. Grimes v. Walton Ct., 591 So. 2d 1091, 1093-94 (Fla. 1st DCA 1992). Intervention is a matter of the trial court's discretion. De Sousa v. JP Morgan Chase, N.A., 170 So. 3d 928, 929 (Fla. 4th DCA 2015).

The petitioner contends that pursuant to I.B. v Department of Children and Families, 876 So. 2d 581, 584 (Fla. 5th DCA 2004) and Sullivan v. Sapp, 866 So. 2d 28, 33 (Fla. 2004), the legal test in order to seek party status is that it " 'must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.' " I.B., 876 So. 2d at 584 (quoting Sullivan, 866 So. 2d at 33). The petitioner here meets that test.

In I.B., DCF sought to declare the minor child dependent after he and his mother tested positive for cocaine. Id. at 582. The child was placed with the appellants/foster parents, who were planning to adopt the child. DCF also contacted the mother's cousin who lived in Tennessee and was also interested in adopting the child. Id. DCF requested that Tennessee conduct a home study on the mother's cousin. Id. The guardian submitted a positive report on the foster parents. Id. Thereafter, the trial court entered an order terminating parental rights to the child and ordered DCF to proceed with the goal of adoption. Id.

DCF then moved to change placement from the foster parents to the Tennessee relatives. Id. at 583. A few days later, the foster parents filed their petition to adopt the child. The foster parents did not have DCF's consent for this adoption. Id. After a hearing, the trial court denied DCF's motion for a

15

change of placement, noting the child had had only one contact with the Tennessee relatives. The trial court ordered DCF to provide visitation for the relatives and the child. Id. Afterwards, DCF filed its case plan update and noted that the adoption applications from both the foster parents and the relatives had been submitted to its adoption review committee and a decision was pending. DCF's adoption review committee then selected the Tennessee relatives as the adoptive parents. Id.

The foster parents moved to intervene in the dependency action. Id. At the hearing on the foster parents' motion, the trial court denied the intervention. Id. The trial court ruled that the decision to select the suitable adoptive parents was one for DCF, not for the trial court, and that the foster parents lacked standing to challenge DCF's decision. Id. at 584. The trial court did not take any evidence at this hearing, did not hear from the foster parents or the guardian, and did not consider the child's best interests in removing him from his home with the foster parents where he had lived for sixteen months. Id. at 583-84. On appeal, the Fifth District Court of Appeal reversed. The Court stated:

> As a threshold matter, we conclude the foster parents clearly have standing to intervene in these proceedings.FN1. The nature of the interest that entitles a party to intervene "must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal

16

operation and effect of the judgment." <u>Sullivan v. Sapp</u>, 866 So. 2d 28, 33 (Fla.2004).

Here "the matter in litigation" was the placement for adoption of the foster parents' child, the child they wanted to adopt and had cared for the past sixteen months. The foster parents would directly gain or lose by the court's rulings. Thus, the foster parents have sufficient interest to warrant intervention in the litigation. <u>See</u> <u>In the Interest of Z.J.S.</u>, 787 So.2d 875 (Fla. 2d DCA 2001); <u>In the Interest of C.G.</u>, 612 So.2d 602 (Fla. 4th DCA 1992).

Even if the foster parents were not properly intervenors in these proceedings, they were already "participants" under Florida Rule of Juvenile Procedure 8.210(b) since they were the child's foster parents. Under this rule, participants may be granted leave by the court to be heard without the necessity of filing a motion to intervene. <u>See</u> <u>N.S. v. Department of Children and Families</u>, 857 So.2d 1000 (Fla. 5th DCA 2003).

<u>Id.</u> at 584-85 (footnote 1 cited to Florida Rule of Civil Procedure 1.230).

Thus, <u>I.B.</u> makes it clear that under the facts of petitioner's case, when there is a corresponding adoption petition that has been filed, the dependency court can allow the adoption petitioner to intervene because she has a clear interest in the underlying subject matter of the dependency case.

Further, the petitioner also has a "sufficient interest to warrant intervention in the litigation." <u>I.B.</u>, 876 So. 2d at 584. The petitioner is the maternal grandmother of D.W., has had custody of D.W. for four years, thus he has lived with them over half of his life. In addition, there is an ongoing adoption petition, and the parental rights of the minor child have been

17

terminated, just as in I.B. The "matter in litigation" in the case before us is the placement for adoption of D.W., who is the child the petitioner wants to adopt and has cared for the past four years. The petitioner will directly gain or lose by the trial court's denial of her motion to intervene. Thus, the trial court in the dependency proceeding had jurisdiction to grant the motion to intervene so the petitioner could present her case on DCF's unreasonable withhold of consent and participate in a meaningful way. See also Berenyi v. Department of Children and Families, 257 So. 3d 1182 (Fla. 3d DCA 2018) (noncustodial grandparents who filed petition to adopt their minor grandson were granted intervenor status in dependency action, as well as in the foster parents' adoption action, after grandparents filed motion to intervene in the dependency case; this Court found that "the Grandparents were 'legally interested parties' entitled to notice and an opportunity to be heard regarding the [foster parents'] petition to adopt the Child."; this Court further found that the grandparents had "established their interest in adopting the Child, including their submission of a home study attached to their own verified petition to adopt the Child."); B.B. v. Department of Children and Families, 854 So. 2d 822 (Fla. 1st DCA 2003) (paternal grandmother of minor twins granted custody of the twins and the minor children lived with the grandmother for three months; the parental rights of the twins' parents were

18

terminated, and court ordered that a cousin of the twins be considered as suitable to adopt the twins, and if she could not, then DCF was to give the grandmother the chance to adopt the minor children; thereafter, the cousin was unable to adopt the twins. DCF did not take action to allow the grandmother to obtain custody of the twins, so appellant filed a motion to intervene in the dependency proceeding, which was denied as premature by the trial court. The grandmother then filed an adoption petition, which was also denied by the trial court, stating it lacked jurisdiction, DCF had identified another adoptive home for the twins; and DCF had not consented to appellant's adoption of the twins. The appellate court held that "[t]he dependency court never loses jurisdiction after a TPR trial, and continues to retain exclusive jurisdiction throughout the adoption process…"; the court further stated that a circuit court has " 'inherent and continuing jurisdiction to entertain matters pertaining to child custody and to enter any order appropriate to a child's welfare.' " Thus, the court held that at the hearings on both the motion to intervene and petition for adoption, the trial court had jurisdiction to allow appellant to "participate in a meaningful way in proceedings involving the ultimate placement of her grandchildren." The appellate court reversed and remanded the case, instructing the court that the grandmother be allowed to adopt if certain safety conditions were met.);

Hausmann ex rel. Doe v. L.M., 806 So. 2d 511 (Fla. 4th DCA 2001) (grandparents would be allowed to intervene in adoption proceedings of their daughter's minor child, where the grandparents filed their own adoption petition before that of the prospective adoptive parents, the grandparents had custody of the child for a period of time (less than six months), and the grandparents challenged whether consents given by the child's parents were invalid because of abandonment).

In opposition, DCF cites to J.L. v. G.M., 687 So. 2d 977 (Fla. 4th DCA 1997). In J.L., the maternal grandmother and maternal aunt and uncle were not allowed to intervene in the dependency proceeding. Id. at 977. The case does not provide facts on whether the maternal grandmother and maternal aunt and uncle had filed a petition for adoption. The appellate court found that granting party status to those relatives was "contrary to Florida's strong public policy against unwarranted interference with the parenting decisions of an intact family unit." Id. at 978. Thus, it appears the child in that case was not living with the relatives who had moved to intervene, the relatives were not the custodians of the minor child, and the minor child's parents' parental rights had not yet been terminated. Id. These are critical facts distinguishable from facts in the case now before this Court.

DCF also cites In Interest of J.S., 404 So. 2d 1144 (Fla. 5th DCA 1981), for the proposition that Chapter 39 does not provide the authority to allow a grandparent to enter an ongoing dependency action solely in their capacity as a grandparent. Id. at 1146. In that case, the grandparent was not the custodian of the minor child. In addition, the child's mother in that case still had her parental rights; there had been no TPR. Id. Thus, we find In Interest of J.S. to be inapplicable here.

It is true that the initial placement of D.W. with the petitioner was initially over the objection of DCF and GALP. However, for four years, DCF did nothing and left D.W. in the petitioner's home with the step-grandfather. Thus, the bonds between D.W. and his grandparents grew stronger over the four years, over half D.W.'s life, as the petitioner points out. The GALP currently supports the petitioner adopting D.W. and agrees with her that DCF's consent was unreasonable withheld.

The petitioner contends the child's best interest is of foremost concern in adoption proceedings. She further argues the trial court's best interest determination will be hindered if she is not meaningfully heard on the matter. The petitioner's point is well-taken as she will not have the ability to adequately advocate her position on whether DCF unreasonably withheld its consent if she is not a party in the dependency proceeding and cannot

conduct discovery to gather information to support her case. Being a participant alone does not give her that ability. There is a need here for intervention because the petitioner argues the AARC lacks transparency and due process.

In construing sections 39.812(5) and 63.082(7), courts must avoid construing a statute in a manner that would achieve an unreasonable result. See In Interest of J.A., 561 So. 2d 356, 358 (Fla. 3d DCA 1990) (construing Chapter 39 to " 'avoid any construction that would produce an unreasonable … consequence.' "); Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) ("[A] literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion."). Here, to accept DCF and the GALP's argument on appeal would lead to an unreasonable result because it would mean that the petitioner is not able to present evidence to the trial court to support her motion that the court find that DCF unreasonably withheld its request for her to adopt D.W. Without the ability to depose GALP employees, the petitioner would not have the evidence she needs to support her arguments.

As D.W.'s custodial caregiver for over the last four years, as the child's maternal grandmother, and as the petitioner in the adoption petition, the petitioner has shown that she has a direct and immediate interest and will

either gain or lose by the dependency court orders. Thus, the trial court abused its discretion in not granting the petitioner's amended motion to intervene. We reverse the order denying the petitioner's amended motion to intervene and remand to the trial court with instructions to grant the petitioner's motion to intervene, giving the petitioner party status in the dependency proceeding for the purposes previously articulated herein.

Reversed and remanded with instructions.